RUTH P. BLAKE (WIDOW); HESTER ANN BLAKE; WILLIAM F. BLAKE AND WIFE, SARAH P. BLAKE; CLIFTON A. BLAKE AND WIFE, ELSIE R. BLAKE; STEPHEN G. BLAKE AND WIFE, EXIE LEE L. BLAKE; MARY BLAKE WITMER (WIDOW); LYDA BLAKE MORRISON AND HUSBAND, HOWARD A. MORRISON, JR.; AND BETTY BLAKE TUCK AND HUSBAND, FRANK S. TUCK v. EDNA BISHOP NORMAN AND HUSBAND, PAUL NORMAN; L. W. BISHOP AND WIFE, MRS. L. W. BISHOP; O. H. BISHOP, JR. AND WIFE, MRS. O. H. BISHOP, JR.; KATHLEEN GUTHRIE HORRELL AND HUSBAND, _____ HORRELL; MARIE GUTHRIE KISTLER AND HUSBAND, _____ KISTLER; ANN ELIZABETH GUTHRIE AND JOHN HAYWOOD GUTHRIE, HEIRS OF LEOLA BISHOP GUTHRIE, DECEASED; L. W. EVERETT (WIDOWER); NORMAN BATTS; THELMA BATTS: MARTHA B. CASEY AND HUSBAND, S. W. CASEY; AND MARGARET BLAKE POLLOCK AND HUSBAND, JAMES POLLOCK; LEON GILBERT THOMAS, JR. AND WIFE, PRISCILLA CROOM THOMAS; A. A. CANOUTAS, TRUSTEE; EDWARD E. WORRELL AND WIFE, CATHERINE M. WORRELL, MORTGAGEES

No. 775SC795

(Filed 29 August 1978)

**Judgments § 37.3— action to quiet title—prior cases involving same division of land—no res judicata or collateral estoppel**

> Plaintiffs' action to quiet title to a lot in a 1956 division of land was not barred by *res judicata* or collateral estoppel because of two prior cases involving lots in the 1956 division where each of the three cases involved different lots in the 1956 division and lappage between a division of land conveyed by plaintiffs' predecessor in title in 1879 and the lot in that particular case, since there was no identity of subject matter or of issues in the three cases.

APPEAL by defendants Edna Bishop Norman, Paul Norman, Martha B. Casey, S. W. Casey, Leon Gilbert Thomas, Jr., Priscilla Croom Thomas, Delphia Everett, Hazel E. Hines, Earl Hines, Wayne H. Everett, Lucille E. Parker, Carlton A. Parker, Luela E. Davis, Major T. Davis, Doris Schindewolf, Billy Gene Schindewolf, Billie E. Coston and husband, Willie Coston, Evelyn Yopp, L. W. Bishop, Mrs. L. W. Bishop and O. H. Bishop, Jr., from *Rouse, Judge*. Order entered 21 July 1977, in Superior Court, PENDER County. Heard in the Court of Appeals 26 June 1978.

Plaintiffs in this action to quiet title allege that they, and the defendants Pollock who refused to act as parties plaintiff, are tenants in common and the owners of Lot No. 1, containing 11.7 acres, assigned to S. G. Blake in the Jesse W. Batson Division as shown on the map thereof made by Raymond Price, surveyor, and recorded in Map Book No. 5, at page 78, Registry of Pender County.

Plaintiffs and defendants Pollock, all of whom will hereafter be referred to as plaintiffs for convenience and clarity, are devisees and heirs of S. G. Blake or his deceased son, Wyatt E. Blake.

Defendants pled, among other things, *res judicata*, more specifically "issue preclusion", also referred to as "collateral estoppel", as a bar to plaintiffs' claim, and at hearing introduced into evidence the Batson Division proceedings, the proceedings and opinions in the *Batson* and *Cutts* cases, and the deeds hereafter referred to in this opinion.

After hearing on the plea in bar the trial court in its order denying the plea in bar included the following findings of fact and conclusions of law:

"3. The basis of the defendant's plea in bar is that the issues in this action have been decided by the cases of *Batson v. Bell,* 249 N.C. 718 (1959), and *Cutts v. Casey,* 271 N.C. 165 (1967); 275 N.C. 599 (1969); 278 N.C. 390 (1971).

4. The plaintiffs in this action were not parties in either *Batson v. Bell, supra,* or *Cutts v. Casey, supra.*

5. Wyatt E. Blake, predecessor in title to Ruth P. Blake, one of the plaintiffs herein, was one of the attorneys for the plaintiffs in *Batson v. Bell, supra,* and *Cutts v. Casey, supra.*

6. S. G. Blake was a party to the Jessie W. Batson Division.

7. S. G. Blake, predecessor in title to all of the plaintiffs in this action, was a surety on the plaintiffs' bond in the case of *Batson v. Bell, supra,* and he agreed with some of the heirs of Jessie W. Batson that he would pay all expenses of the division of the Jessie W. Batson lands on Topsail Island.

8. Wyatt E. Blake, son and heir of S. G. Blake, was one of the attorneys for plaintiffs in *Batson v. Bell, supra,* and *Cutts v. Casey, supra.*

9. All of the plaintiffs, except Ruth Blake, and defendants Pollock derive their title through the will of S. G. Blake. Plaintiff Ruth Blake derives her title through the will of W.

Blake v. Norman

E. Blake, son and heir of S. G. Blake, who was deeded his interest by S. G. Blake.

10. The present plaintiffs (and the defendants Pollock), are heirs of S. G. Blake and Wyatt E. Blake.

11. The land in controversy in this action, being Lot No. 1 of the Jesse W. Batson Division, was not in question in either *Batson v. Bell, supra,* or *Cutts v. Casey, supra.* The plaintiffs in this action and in *Batson v. Bell, supra,* and *Cutts v. Casey, supra,* derive their title from the Jessie W. Batson Division. The defendants in the instant action and in *Cutts v. Casey, supra,* derive title from the Millie Bishop Division, which in turn derives from Jessie W. Batson.

12. This action involves a completely different portion of the Jessie W. Batson Division than either *Batson v. Bell, supra,* . . . and except for the Defendant Casey, this action involves completely different parties.

13. The case of *Batson v. Bell, supra,* was after trial in Superior Court in Pender County, appealed to the North Carolina Supreme Court and reported in 249 N.C. 718, and the case of *Cutts v. Casey, supra,* after three trials in the Superior Court of Pender County was appealed each time to the North Carolina Supreme Court and reported in: 271 N.C. 165 (1967), 275 N.C. 599 (1969) and 278 N.C. 390 (1971).

14. Defendant's Motion to Dismiss based upon the alleged failure of the plaintiffs to pay the costs of the previous action which was voluntarily dismissed pursuant to Rule 41 of the North Carolina Rules of Civil Procedure was not properly before the Court by either written Motion or by proper service.

15. Neither *Batson v. Bell, supra,* nor *Cutts v. Casey, supra,* purported to be and they were not class actions so as to bind the plaintiffs in this action.

## CONCLUSIONS OF LAW

1. That the present action is in no way controlled or determined by either the cases of *Batson v. Bell, supra,* or *Cutts v. Casey, supra.*

2. That none of the plaintiffs in this action nor their predecessor in title had such a relation to any of the parties of interest in either *Batson v. Bell, supra,* or *Cutts v. Casey, supra,* as to make them responsible for the final result of said cases.

3. That plaintiffs in this action not being parties to the previous actions of *Batson v. Bell, supra,* or *Cutts v. Casey, supra,* nor their predecessors in title being parties to *Batson v. Bell, supra,* or *Cutts v. Casey, supra,* are not bound by the holdings, issues, or factual determinations of said cases.

4. That neither Wyatt E. Blake nor S. G. Blake had such direct, pecuniary or real interest in *Batson v. Bell, supra,* or *Cutts v. Casey, supra,* as to be considered a party and bound by the result of either action."

*Rountree & Newton by Kenneth A. Shanklin; and Gary E. Trawick for plaintiff appellees.*

*Corbett & Fisler by Leon H. Corbett, Robert Hugh Corbett and Leon H. Corbett, Jr.; Marshall, Williams, Gorham & Brawley by Lonnie B. Williams for defendant appellants.*

CLARK, Judge.

Defendants' plea that the *Batson* and *Cutts* cases are *res judicata* and a bar to plaintiffs' claim requires an examination of these cases, which were introduced in evidence at the hearing on defendants' plea. See *Batson v. Bell,* 249 N.C. 718, 107 S.E. 2d 562 (1959), and *Cutts v. Casey,* 271 N.C. 165, 155 S.E. 2d 519 (1967); 275 N.C. 599, 170 S.E. 2d 598 (1969); and 278 N.C. 390, 180 S.E. 2d 297 (1971).

In both the *Batson* and *Cutts* cases plaintiffs traced title to land grant No. 1696, dated 20 April 1859, from the State of North Carolina to Jesse W. Batson, conveying 51 acres of land described as follows:

"BEGINNING at a stake, William B. Sidbury's corner on the Sound, running thence with Sidbury's line across the Banks South 25 East 66 poles to a stake at the edge of the ocean; thence with the edge of the ocean North 53 East 107 poles [1765.5 feet] to Fredrick Ruhe's line; thence with Ruhe's line

North 25 West 88 poles to Crooked Creek; thence with the
meander of said creek to the beginning. . . ."

This tract fronted 1765.5 feet on the Atlantic Ocean.

On 1 August 1879 Jesse W. Batson and his wife conveyed to
Millie Bishop a part of the above tract, described as follows:

"BEGINNING at a stake, Vashti Atkinson's . . . corner on the
Sound, running thence with said Vashti Atkinson line across
the banks S. 25 E. 66 poles to a stake at the edge of the
ocean; thence with the edge of the ocean N. 53 E. 53 poles to
a stake; thence N. 25 W. 88 poles to the sound; thence with
the meanders of the sound back to the beginning. . . ."

This tract fronted 874.5 feet on the Atlantic Ocean and was
the southern half of the original Jesse W. Batson tract. Batson re-
tained about one-half of the original tract, and the retained tract
fronted 891 feet on the Atlantic Ocean, assuming that the
distance calls in the Batson grant are accurate.

In 1956 the retained Batson tract was owned by the heirs of
Jesse W. Batson and S. G. Blake who had acquired an undivided
interest in the tract. It appears that the Rhue line on the North
was known and established on the ground. The retained tract was
divided into twelve lots, beginning with Lot No. 1 (allotted to S.
G. Blake), which adjoined the Rhue line on the North, and ending
with Lot No. 12 at the South purportedly adjoining the Bishop
line. A map of this Division appears in *Cutts v. Casey*, 278 N.C.
390, at page 409, 180 S.E. 2d 297, at page 318 (1971).

In this Division the twelve lots fronted on the Atlantic Ocean
for a distance of 2574 feet, although under the distance calls in
the original Batson grant (1765.5 feet) and the part conveyed to
Millie Bishop (874.5 feet) there remained in the retained tract only
891 feet fronting on the Atlantic Ocean. The original Batson grant
called for Ocean frontage of 1765.5 feet; the Division increased the
total ocean frontage to 3448.5 feet, placing the Millie Bishop
Tract, with 874.5 feet ocean frontage, between Lot No. 12 of the
Division and the Sidbury tract on the South. But it appears that
the owner of the Sidbury tract did not accept the location of their
northern boundary as shown on the Division Map, and the owners
of the Millie Bishop tract did not accept the location of their line

as shown on the Division Map. The owners of the Bishop tract effected a subdivision with their lots overlapping many, if not all, of the Batson Division lots. A map of this Division appears in *Cutts v. Casey*, 278 N.C. at 408, 180 S.E. 2d at 317.

It is noted that if the distance calls in the original Batson grant and the deed from Batson to Millie Bishop are accurate, the Batson retained tract (with ocean frontage of 891 feet), would cover only Lots 1, 2, and a part of Lot No. 3 of the Division, and that the remainder of Lot No. 4 and all of Lots Nos. 5 through 12 would be within the boundaries of the Millie Bishop tract or the Sidbury tract on the South. Apparently, the claim of the Batson heirs and S. G. Blake, as shown in the Division (which almost tripled the size of the retained Batson tract), and the disputed location of the Sidbury land triggered the land disputes and land actions.

In *Batson v. Bell, supra*, plaintiffs claimed ownership of Lot No. 7 of the Batson Division, and defendants were the owners of a lot which was a part of the Millie Bishop tract. The Millie Bishop tract had been subdivided into six lots, each fronting 159.3 feet on the ocean, for a total ocean frontage of 955.8 feet, as shown on the map reproduced in *Cutts v. Casey*, 278 N.C. at 408, 180 S.E. 2d at 317. The ocean frontage of 955.8 feet exceeded by 81.3 feet the distance designated in the Batson deed to Millie Bishop. But the Sidbury line called for in the Batson grant was located much further North than shown in the Batson Division, resulting in extensive overlapping and conflicting claims. This action was determined by judgment against plaintiffs because plaintiffs failed to carry the burden of proving that they were the owners of Lot No. 7 as shown and located on the map of the Batson Division. It appears that plaintiffs failed to prove the location of the Sidbury line, which bounded the original Batson grant on the South and the location of the lands conveyed in 1879 from Batson to Millie Bishop.

In *Cutts v. Casey, supra*, the plaintiff claimed ownership of Lot No. 3 of the Batson Division. The jury answered the issues against the plaintiff finding that plaintiff failed to prove the location of the Sidbury line on the South and the Millie Bishop tract. The trial judge granted plaintiff's motion for judgment notwithstanding the verdict in favor of defendants. The Supreme

Court of North Carolina reversed and remanded with directions to the trial court to enter the judgment tendered by defendants, on the grounds that the trial court did not have the power to direct a verdict in favor of the party having the burden of proof. This judgment decreed that plaintiff was not the owner of Lot No. 3 in the Batson Division and incorporated the court's ruling "nonsuiting" defendants' cross action. Again, it appears that plaintiff failed to prove to the satisfaction of the jury the location of the Sidbury line on the South and the location of the lands conveyed in 1879 from Batson to Millie Bishop. However, in *Cutts v. Casey*, 271 N.C. 165, 155 S.E. 2d 519 (1967), when the case first came to the Supreme Court, it was held that plaintiff's evidence would justify a finding that the land he claims lies within the Batson grant and outside the Millie Bishop tract, and reversed the nonsuit entered by the trial court. It may be reasonably concluded that defendants were victorious not because of the strength of their own title but because of what the jury found to be the weakness of plaintiff's title.

In *Cutts*, 278 N.C. at 411, 180 S.E. 2d at 307-308, Justice Sharp (now Chief Justice), stated:

"A failure of one of the parties to carry his burden of proof on the issue of title does not, *ipso facto*, entitle the adverse party to an adjudication that title to the disputed land is in him. He is not relieved of the burden of showing title in himself. *Moore v. Miller*, 179 N.C. 396, 102 S.E. 627. 'The plaintiff must recover on the strength of his own title, and upon failure of proof by him the jury may well find that he is not the owner of the land, although satisfied that the defendant has no title.' *Wicker v. Jones*, 159 N.C. 103, 116, 74 S.E. 801, 806. This statement is, of course, equally applicable to a defendant who has set up a cross action in which he claims title to the land in dispute. Thus, in this case, if defendants fail to locate the Millie Bishop tract according to their contentions, title cannot be adjudicated in plaintiff merely because of defendants' failure of proof. The burden remains upon plaintiff to prove his title. There are cases involving a disputed title to land in which neither party can carry the burden of proof."

It does not appear in either the *Batson* or *Cutts* cases that defendants by cross-action established title to lands they claimed.

The parties plaintiff who had the burden of proof failed to establish title. It is noted that plaintiffs claim title to Lot No. 1 of the Batson Division, the northernmost lot in the Division, which adjoins the established Rhue line on the North. The lots claimed by plaintiffs in the *Batson* and *Cutts* cases were located South of Lot No. 1.

S. G. Blake was a party to the partition proceeding which effected the Batson Division. The parties plaintiff in the *Batson* and *Cutts* cases, or their predecessors in title, were parties to this partition proceeding. Wyatt Blake, son of S. G. Blake, was the attorney for the parties in this partition proceeding and was an attorney for plaintiffs in both the *Batson* and *Cutts* cases, *supra*, and his clients failed to prove title in either case. In the case *sub judice* plaintiffs are the heirs of S. G. Blake and devisees of Wyatt Blake, who was deeded his interest by his father, S. G. Blake.

Defendants contend that the parties to the Batson partition proceeding, and the parties plaintiff in the *Batson* and *Cutts* cases had the same duty of locating the Sidbury line on the South and the part of the Batson grant conveyed to Millie Bishop, in order to prove that their lands were located within the retained Batson grant; that the parties plaintiff in the case *sub judice*, in order to prove title, must locate on the ground the Batson Division (retained Batson grant), and that issue having previously been determined against parties with whom they are in privity, the parties plaintiff are barred from doing so upon the principle of "issue preclusion", a part of the doctrine of *res judicata*, or upon the doctrine of collateral estoppel.

The doctrines of *res judicata* and collateral estoppel are based upon the same policy considerations, which are: (1) that each person have his day in court to completely adjudicate the merits of his claim for relief, and (2) that the courts must demand an end to litigation when a claimant has exercised his right and a court of competent jurisdiction has ruled on the merits of his right. *Crosland-Cullen Co. v. Crosland*, 249 N.C. 167, 105 S.E. 2d 655 (1958); *Gillispie v. Bottling Co.*, 17 N.C. App. 545, 195 S.E. 2d 45, *cert. denied*, 283 N.C. 393, 196 S.E. 2d 275 (1973).

North Carolina recognizes both doctrines. In *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E. 2d 799, 805 (1973), the court stated:

"Under a companion principle of *res judicata,* collateral estoppel by judgment, parties and parties in privity with them — even in unrelated causes of action — are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination. *Masters v. Dunstand* [256 N.C. 520, 124 S.E. 2d 574 (1962)]; *Deaton v. Elon College,* 226 N.C. 433, 38 S.E. 2d 561 (1946); 5 Strong, N.C. Index 2d, Judgments § 35 (1968); 46 Am. Jur. 2d, Judgments § 418 (1969). See also *Poindexter v. Bank,* 247 N.C. 606, 101 S.E. 2d 682 (1958); *Craver v. Spaugh,* 227 N.C. 129, 41 S.E. 2d 82 (1947). As stated by Mr. Justice Murphy in *Commissioner v. Sunnen,* 333 U.S. 591, 599, 92 L.Ed. 898, 907, 68 S.Ct. 715, 720 (1948): '[Collateral estoppel] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally.'

The distinction between *res judicata* and collateral estoppel or estoppel by judgment was stated by Mr. Justice Field in *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195, 198 (1877):

'. . . The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

'But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'

This distinction was recognized and approved in *Clothing Co. v. Hay,* 163 N.C. 495, 79 S.E. 955 (1913); *Ferebee v. Sawyer,* 167 N.C. 199, 83 S.E. 17 (1914)."

---

Blake v. Norman

---

The general principles applicable to both doctrines were stated by Justice Devin in *Light Co. v. Insurance Co.,* 238 N.C. 679, 79 S.E. 2d 167 (1953), as follows:

" 'It is a principle of general elementary law that the estoppel of a judgment must be mutual.' *Bigelow v. Old Dominion C. Min. & S. Co.,* 225 U.S. 111. . . .

Estoppel by judgment operates only on parties and their privies. It is a maxim of law that no person shall be affected by any judicial investigation to which he is not a party, unless his relation to some of the parties was such as to make him responsible for the final result of the litigation. An adjudication affects only those who are parties to the judgment and their privies, and gives no rights to or against third parties. 1 Freeman on Judgments, sec. 407. Privies are 'persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them.' Black's Law Dictionary. 'To make a man a privy to an action, he must have acquired an interest in the subject-matter of the action, either by inheritance, succession, or purchase of a party subsequent to the action, or he must hold the property subordinately.' Ballentine's Law Dictionary. 'Any of those persons having mutual or successive relationship to the same right of property.' Webster.

'. . .When issues on the same subject-matter have once been settled by litigation between the same parties or their privies, before a court of competent jurisdiction, and the estoppel of the judgment is mutual, that is to say that the other party would be bound if the original decision had been to the contrary, then in the interest of reasonable finality of litigation that decision should be conclusive.'

. . . .

Generally, in order that the judgment in a former action may be held to constitute an estoppel as *res judicata* in a subsequent action there must be identity of parties, of subject matter and of issues. It is also a well established principle that estoppels must be mutual, and as a rule only parties and privies are bound by the judgment. These rules are subject to exception." 238 N.C. at 689-91, 79 S.E. 2d at 173-175.

North Carolina has recognized some exceptions to those general rules in cases cited and relied on by the defendants. We recognize the exceptions but do not find that those cases involve factual situations similar to, or that they are determinative of, the case *sub judice*. See Note, Civil Procedure — Offensive Assertion of a Prior Judgment as Collateral Estoppel — A Sword in the Hands of the Plaintiff?, 52 N.C.L. Rev. 836 (1974). See also Note, Civil Procedure — Collateral Estoppel: The Fourth Circuit Squeezes an Oversized Judgment Through a Narrow Issue, 55 N.C.L. Rev. 219 (1977); and Note, Civil Procedure — Broadening the Use of Collateral Estoppel — The Requirement of Mutuality of Parties, 47 N.C.L. Rev. 690 (1969).

The ultimate issue in the *Batson* case was whether plaintiffs were the owners of Lot No. 7 of the Batson Division, and in the *Cutts* case the issue was whether plaintiff was the owner of Lot No. 3 of the Batson Division. It appears that in both cases plaintiffs attempted to prove ownership (title) by locating the original Batson grant, the location of the tract conveyed from the grant by Jesse W. Batson to Millie Bishop, and that Lot No. 7 in the *Batson* case and Lot No. 3 in the *Cutts* case were located within that part of the grant retained by Jesse W. Batson. The plaintiffs in both cases failed to prove their title to their respective lots to the satisfaction of the jury. However, there was no adjudication that title to the disputed lands was vested in the defendants in either *Batson* or *Cutts*.

Both the *Batson* and *Cutts* cases involved a lappage and the extent to which the Millie Bishop Tract (since divided by her heirs into six lots) claimed by defendants in both cases covered the plaintiffs' lots within the Batson Division. It appears from the *Cutts* case that the heirs of Millie Bishop claim most, if not all, of the Batson grant (the lands lying between the Sidbury line on the South and the Rhue line on the North). But the deed from Batson to Millie Bishop did not call for the Rhue line; nor did the Bishop Division recognize the Rhue line. Counsel for defendants in their brief (page 2), in making their statement of the case after asserting the claim of the Millie Bishop heirs, added: "If, in fact, any lands were left, they were vested in the heirs of Jesse W. Batson." This statement recognizes the lappage question. Plaintiffs allege ownership of Lot No. 1 of the Batson Division, which adjoins the Rhue line on the North. Assuming that plaintiffs at-

tempt to prove this title to Lot No. 1 by going back to the State grant, as did plaintiffs in *Batson* and *Cutts*, they could prove that the lot, or some part of it, is within the original Batson grant which remained after Jesse W. Batson made the conveyance to Millie Bishop, even though plaintiffs in the *Batson* and *Cutts* cases were unable to prove title to and location of their respective lots.

Because plaintiffs claim ownership of lands which are not the same lands claimed by plaintiffs in the *Batson* and *Cutts* cases and because there is a question of lappage, there is neither identity of subject matter nor of issues.

Since we find no identity of subject matter or issues, we do not treat the question of mutuality of parties raised by the defendants.

The findings of fact by the trial court are supported by competent evidence and the facts found fully support the conclusions of law.

Affirmed.

Judges PARKER and ERWIN concur.