307 S.E.2d 181 (1983)
TAR LANDING VILLAS OWNERS' ASSOCIATION, et al.
v.
The TOWN OF ATLANTIC BEACH.
A PLACE AT the BEACHATLANTIC BEACH HOMEOWNERS' ASSOCIATION, INC., et al.
v.
The TOWN OF ATLANTIC BEACH.
No. 823SC968.
Court of Appeals of North Carolina.
October 4, 1983.
*183 Dennis M. Marquardt, Morehead, for petitioners appellees and cross appellants Tar Landing Villas Owners' Association, et al.
Darden & Pierce by Robert D. Darden, Jr., Morehead, for petitioners-appellees and cross-appellants A Place At The Beach, Atlantic Beach, et al.
Mason & Phillips by L. Patten Mason, Morehead, for respondent-appellant and cross-appellee Town of Atlantic Beach.
*184 VAUGHN, Chief Judge.
The first question raised by petitioners on appeal is whether the trial court erred in refusing to apply the doctrine of collateral estoppel or res judicata. We affirm that part of the judgment holding that neither the doctrine of res judicata nor collateral estoppel precluded the Town from annexing petitioners' properties.
The doctrine of res judicata, which bars subsequent lawsuits on a cause of action previously litigated and decided on the merits, is inapplicable in this case. See King v. Grindstaff, 284 N.C. 348, 200 S.E.2d 799 (1973). Petitioners' cause of action arises under an annexation ordinance enacted subsequent to the ordinance resulting in the 1981 judgment.
It is the doctrine of collateral estoppel, which precludes relitigation of issues actually litigated, determined and necessary to a former judgment, that concerns this court. See King v. Grindstaff, supra. Unlike res judicata, collateral estoppel may bar relitigation of an issue arising under a new cause of action. We find that the issue of whether to count each condominium unit as a tract or lot under G.S. 160A-36(c) was litigated, determined on the merits and necessary to the 1981 judgment. Furthermore, unlike the trial court, we find that the expansion of the condominium projects since the 1981 judgment and the increased number of unit owners does not present a significant factual difference. The scheme of condominium development and ownership is the same. Nevertheless, we refuse to apply the doctrine of collateral estoppel.
In this State, we have, with a few exceptions, followed the traditional view of collateral estoppel, which requires not only that issues be identical but that parties be identical or in privity with parties to the prior judgment. See Mortgage Corp. v. Insurance Co., 299 N.C. 369, 261 S.E.2d 844 (1980). Under the rule of mutuality, a party to a subsequent action "who was not a party [or is not privy to a party] to the former action and, therefore, is not estopped by the judgment therein, cannot assert the judgment as an estoppel against his opponent, even though the opponent was a party to the action in which the judgment was rendered." Kayler v. Gallimore, 269 N.C. 405, 407, 152 S.E.2d 518, 520 (1967). This court has cited with approval such definitions of privity as: "persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them," Black's Law Dictionary; persons who "have acquired an interest in the subject matter of the action, either by inheritance, succession, or purchase of a party subsequent to the action ...," Ballentine's Law Dictionary; persons "having a mutual or successive relationship to the same right of property," Webster, quoted in Blake v. Norman, 37 N.C.App. 617, 626, 247 S.E.2d 256, 262, cert. denied, 296 N.C. 106, 250 S.E.2d 35 (1978). See also Masters v. Dunstan, 256 N.C. 520, 124 S.E.2d 574 (1962); Tidwell v. Booker, 290 N.C. 98, 225 S.E.2d 816 (1976).
Petitioners in this action are the individual owners of condominium units and the corporate associations of condominium owners in three condominium projects. Corporate petitioners and many of the individual condominium unit owners are the same parties who instituted the 1981 suit. Furthermore, those who purchased units from petitioners in the 1981 suit are privies to such former petitioners, since, pursuant to the above definitions, they purchased "an interest in the subject matter of the action," acquiring a "successive relationship" in the same property. Respondent is the same in both suits. Under the traditional view, thus, corporate petitioners and individual petitioners who acquired units from former petitioners could successfully assert the former judgment as an estoppel against the Town. While it is questionable whether privity exists among owners of units built subsequent to the 1981 suit, we need not decide this question since our holding is not based on the rule of mutuality.
We have recognized exceptions to the mutuality rule. See King v. Grindstaff, supra; Crosland-Cullen Co. v. Crosland, 249 *185 N.C. 167, 105 S.E.2d 655 (1958); Note, Civil ProcedureOffensive Assertion of a Prior Judgment as Collateral EstoppelA Sword in the Hands of the Plaintiff; 52 N.C.L. Rev. 836 (1974). While we recognize these exceptions and approve of the expanded doctrine as a way to end vexatious litigation, we, nevertheless, find that it would be inequitable to allow petitioners, even those with privity, to assert the doctrine in this case. The policies behind collateral estoppel are: "(1) that each person have his day in court to completely adjudicate the merits of his claim for relief, and (2) that the courts must demand an end to litigation when a court of competent jurisdiction has ruled on the merits of his right." 37 N.C.App. at 624, 247 S.E.2d at 261. Pursuant to G.S. 160A-36, the Town enacted a new annexation ordinance, the viability of which has never been determined by this Court. Petitioners instituted suit and now demand that we declare the new ordinance void without judicial review on the merits. Petitioners, however, having instituted suit, are not now entitled to protection under the doctrine of collateral estoppel.
In King v. Grindstaff, the Supreme Court allowed a nominal party to the prior action to assert the prior judgment offensively. When a party asserts the doctrine offensively, however, as did petitioners in this case, we believe that a court should strictly scrutinize whether to apply the doctrine in light of judicial economy and fairness to the other party. Offensive assertion of the doctrine occurs when a plaintiff attempts to prevent a defendant from relitigating issues it previously and unsuccessfully litigated. Defensive assertion of the doctrine occurs when a defendant attempts to prevent a plaintiff from bringing a claim previously and unsuccessfully litigated. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). We agree with the Supreme Court in Parklane that offensive use of collateral estoppel may increase rather than decrease litigation and may, in certain circumstances, be unfair to the respondent. "[T]he preferable approach for dealing with these problems ... is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." Id. at 331, 99 S.Ct. at 651, 58 L.Ed.2d at 562. The trial court was within its discretion in determining that the doctrine did not apply. Collateral estoppel developed as a means of protecting a person from legal harassment and redundant legal fees. See Divine v. C.I.R., 500 F.2d 1041 (2d Cir.1974). Refusing to apply the doctrine, in this case, subjects petitioners to neither.
The doctrine of collateral estoppel may be applied regardless of whether the issue involves questions of fact or law. See King v. Grindstaff, supra; Masters v. Dunstan, supra. When the issue, however, as in this case, involves the scope and formulation of a law never before addressed by an appellate court in this State, we believe that our duty to develop the law outweighs the resulting burden on petitioners.
[T]he policy supporting issue preclusion is not so unyielding that it must invariably be applied, even in the face of strong competing considerations. There are instances in which the interests supporting a new determination of an issue already determined outweigh the resulting burden on the other party and the courts.
Restatement (Second) of Judgments § 28(5) comment g (1980). We find the policy considerations in the Restatement of Judgments against applying the doctrine when the issue concerns a fresh determination of the law to be persuasive.
[The] function of developing the law ... is especially pertinent when there is a difference in forums in which the two actions are to be determined, as when the issue was determined in the first action by a trial court and in the second action will probably be taken to an appellate court ... [or] when the issue is of general interest and has not been resolved by the highest appellate court that can resolve it ... [I]t is also pertinent that the party against whom the rule of preclusion is to be applied is a government agency responsible for continuing administration *186 of a body of law applicable to many similarly situated persons.
Restatement (Second) of Judgment § 29(7) comment i (1980). The Town of Atlantic Beach will, in all likelihood, continue to grow and expand. Furthermore, in light of continued future growth in our State and the burgeoning of condominium developments, we believe our decision today has statewide importance. By determining the scope of G.S. 160A-36(c), we believe we will discourage litigation from persons similarly situated to petitioners.
For the above reasons, we affirm such part of the judgment of the trial court, and hold that the doctrine of collateral estoppel does not preclude this court from determining the scope of G.S. 160A-36(c).
The second question raised by the Town on appeal is whether the subdivision test in G.S. 160A-36(c), whereby at least 60% of an area to be annexed must consist of lots or tracts five acres or less in size, is satisfied by counting individual condominium units as tracts or lots. We reverse the judgment for petitioners and hold that individual condominium units may be counted as lots in determining the 60% requirement of G.S. 160A-36(c).
G.S. 160A-36(c) states that an "area to be annexed must be developed for urban purposes." Under the statute, an area is developed for urban purposes if two tests are met: First, at least 60% of the total number of tracts or lots in the area to be annexed must be used for residential, commercial, industrial, institutional or governmental purposes. Second, at least 60% of the total acreage that is vacant or used for residential purposes must consist of lots or tracts five acres or less in size. The Town must meet both tests in order to extend its municipal corporate limits. Lithium Corp. v. Bessemer City, 261 N.C. 532, 135 S.E.2d 574 (1964).
At trial the Town established that 97% of the lots and tracts in the area in question were used for residential or governmental purposes. The question before this Court, therefore, concerns the second test of G.S. 160A-36(c). If condominium units are counted as tracts or lots under the statute, then 87.79% of the properties in dispute are tracts or lots five acres or less in size, and the subdivision test in G.S. 160A-36(c) is met.
It is ... an accepted rule of [statutory] construction that in ascertaining the intent of the Legislature in cases of ambiguity, regard must be had to the subject matter of the statute, as well as its language, i.e., the language of the statute must be read not textually, but contextually, and with reference to the matters dealt with, the objects and purposes sought to be accomplished, and in a sense which harmonizes with the subject matter... And where the meaning of a statute is doubtful, the history or legislation on the general subject dealt with ... may be considered in connection with the object, purpose and language of the statute, in order to arrive at its true meaning.
Cab Co. v. Charlotte, 234 N.C. 572, 576, 68 S.E.2d 433, 436 (1951).
Following such recognized principles of statutory construction and in view of the legislative history behind Chapter 160A showing a general intent to seek economic growth and development, we construe the word "lot" in G.S. 160A-36(c) to include the concept of a condominium unit. Specifically, the legislative history behind G.S. 160A-36(c) suggests that the tests in G.S. 160A-36(c) were not meant to undermine the general principal that a town can annex property developed for urban purposes. G.S. 160A-36(c), enacted in 1959, was the result of a Study and recommendations of the "Municipal Government Study Commission." See Lithium Corp., supra; Act of June 16, 1959, ch. 1010,1959 N.C.Sess. Laws 1031-1038. According to such Study, "[T]he requirement that land be `undergoing urban development' is made general on purpose ... [M]ore specific definition would rob the cities of necessary flexibility in fixing boundary lines ...," quoted in 261 N.C. at 537, 135 S.E.2d at 578. The urban purposes of condominium developments do not change merely because the common areas *187 shared by unit owners extend beyond five acres. As stated by the 1959 Study Commission, "[T]he legislative standard should act as a brake only with respect to attempted annexation of large tracts of agricultural or vacant land where no evidence of urban development can be shown," quoted in 261 N.C. at 537, 135 S.E.2d at 578.
In holding that petitioners' properties are subject to annexation, we are upholding the policy in G.S. 160A-33 that "sound urban development is essential to continued economic development ..." and that "municipal boundaries should be extended ... to provide the high quality of governmental services needed therein for the public health, safety, and welfare." Condominium unit owners need municipal services like water, sewage disposal, and police and fire protection just as do homeowners in any new development. The purpose of the Town's annexation ordinance was to "provide services to the area being annexed." It would lead to anomalous results and violate legislative intent to construe the statute as applying to the property of homeowners but not to the property of condominium unit owners.
In formulating plans for enacting G.S. 160A-36(c) the 1959 Study Commission had in mind "typical suburban areas undergoing development, containing subdivisions with streets, lots, and tracts, having a substantial portion in actual use, and being adaptable to water, sewer and other service extensions. The Commission recognized that there would be variations from this pattern." 261 N.C. at 538, 135 S.E.2d at 578, 579. The modern surge of condominium development is a variation of the 1959 pattern of urban development which, we believe, falls within the scope of G.S. 160A-36(c).
In Adams-Millis Corp. v. Town of Kernersville, 6 N.C.App. 78, 169 S.E.2d 496, cert. denied, 275 N.C. 681 (1969), this Court noted several methods which can be used to determine what is a lot. The method used by the Town, which we adopt in this case, is to count each numbered lot separately. Our acceptance of the Town's method accords with G.S. 160A-42, which states that "for purposes of meeting the requirements of G.S. 160A-36, the municipality shall use methods calculated to provide reasonably accurate results ..." and that "the reviewing court shall accept the estimates of the municipality ... [a]s to degree of land subdivision, if the estimates are based on an actual survey, or on county tax maps or records ..." The Town based its land estimates on tax records and recorded plat mapsprocedures both the Legislature and this Court have specifically approved. See G.S. 160A-42(1), (2); Scovill Mfg. Co. v. Town of Wake Forest, 58 N.C.App. 15, 293 S.E.2d 240, review denied, 306 N.C. 559, 294 S.E.2d 371 (1982); Adam-Millis Corp., supra.
Webster defined "lot" as "a measured parcel of land having fixed boundaries and designated on a plot or survey." Webster's 7th New Collegiate Dictionary, (1969). Including "condominium unit" within the scope of the definition accords with the general view of condominium ownership, which regards a unit as a special form of real property. A condominium is said to be "an estate in realty consisting of separate interests in residential buildings together with an undivided interest in common ... portions of the same property. The unit is a separate interest in common areas and in [the] entire condominium except units rented," 6 Thompson on Real Property, § 3011 (Supp.1981), or put another way, it is a "form of ownership under which the separate units of a multi-unit improvement of real property are subject to ownership by different owners, and there is appurtenant to each unit an undivided share in the common elements." Boger, Survey of the Law of Property 667 (1981).
We regard each condominium unit as a separate lot even though unit owners may also own an undivided interest in common areas and facilities. Our holding is in line with the Unit Ownership Act, Chapter 47A which treats a unit owner like any other owner of real property. Specifically, under G.S. 47A-5, unit ownership is said to "vest in the holder exclusive ownership and possession *188 with all the incidents of real property." The statute further provides that such condominium unit "may be individually conveyed, leased and encumbered and may be inherited or devised by will, as if it were solely and entirely independent of the other condominium units in the buildings of which it forms a part." Under G.S. 47A-6(c), "the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains and shall be deemed conveyed or encumbered with the unit ..." Finally, under G.S. 47A-21, each condominium unit and its percentage of undivided interest in the common areas and facilities is deemed a parcel, separately assessed and taxed.
In accordance with the general view of condominium ownership and with Chapter 47A, we regard each condominium unit as a parcel of real property. In further accordance with both Webster's definition of lot and the legislative intent behind the annexation statutes, we hold that each condominium unit is a separate lot and that the Town, therefore, met the subdivision test of G.S. 160A-36(c).
On petitioners' appeal, the order is affirmed. On respondent's appeal, the order is reversed. The case is remanded for proceedings not inconsistent with this opinion.
Reversed and remanded.
HILL and BECTON, JJ., concur.