HUYCK CORPORATION, ET AL. v. TOWN OF WAKE FOREST

No. 8610SC1088

(Filed 2 June 1987)

1. **Municipal Corporations § 2.1— annexation—coincidence of boundary—compliance with requirement**

    There was no merit to petitioners' argument in an annexation proceeding that respondent improperly included two additional areas, neither of which would independently meet the "urban purposes" requirement of N.C.G.S. § 160A-36(c), within the proposed annexation area in order to comply with the coincidence of boundary requirement of N.C.G.S. § 160A-36(b)(2), since each of the three portions included in the proposed annexation area was contiguous to the existing town boundary, and, by using a particular strip of land as a connector, they were contiguous to each other.

2. **Municipal Corporations § 2.2— annexation—urban purposes—compliance with requirement**

    Evidence was sufficient to support the trial court's finding that an area proposed for annexation complied with the "urban purposes" requirement of N.C.G.S. § 160A-36(c). The standard argued by petitioners which would permit only those specific portions of an industrial, commercial, institutional or governmental tract which were actually under roof or pavement to be considered as "used" for purposes of annexation was unreasonable, was beyond the requirement of the statute, and had been rejected by the N.C. Supreme Court.

3. **Municipal Corporations § 2.1— annexation—provision of police and fire protection—compliance with statutory requirement**

Respondent's plans for providing police and fire protection services were sufficient to satisfy the requirements of N.C.G.S. § 160A-35(3)a where the plans contained information with respect to the current level of services within the town, a commitment to provide substantially the same level of services in the annexation area, and information as to how the extension of services would be financed.

4. **Municipal Corporations § 2.6— annexation—extension of utilities—validity of ordinance not contingent upon specified date for bond referendum**

Contrary to petitioners' argument, the validity of an annexation ordinance was not contingent upon the passage of a bond referendum on a specified date, but was contingent only upon the town's having the necessary funds appropriated for extension of water and sewer services as of the effective date of the ordinance, and such contingency was met by passage of a bond proposal on 3 December 1985.

APPEAL by petitioners from *Farmer, Judge.* Judgment entered 14 July 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 11 March 1987.

On 1 February 1984, the Town of Wake Forest (the Town), acting through its Board of Commissioners, adopted Ordinance #84-2, entitled "An Ordinance To Extend The Corporate Limits Of The Town Of Wake Forest, Under the Authority Granted By Part 2, Article 4A, Chapter 160A of the General Statutes of North Carolina." The purpose of the ordinance was to annex an area, known as the Southside area, which is located south of the present corporate boundary of Wake Forest. The area includes several industrial plants and businesses as well as the unincorporated community of Forestville. The individual petitioners are residents of the area proposed for annexation; the corporate petitioners own industrial and commercial property within the area. On 1 March 1984, petitioners petitioned the Superior Court of Wake County for judicial review of the annexation proceeding pursuant to G.S. 160A-38. On 14 July 1986, judgment was entered affirming without change the adoption of the annexation ordinance. From the entry of this judgment, petitioners appeal.

*I. Beverly Lake and Jane P. Harris for petitioners-appellants.*

*Ellis Nassif and Manning, Fulton & Skinner, by Howard E. Manning and Charles E. Nichols, Jr., for respondent-appellee.*

MARTIN, Judge.

The petitioners contend that the annexation ordinance is invalid because the Town failed to comply with (1) the "coincidence of boundary" requirement of G.S. 160A-36(b)(2), (2) the "urban purposes" requirement of G.S. 160A-36(c), and (3) the "extension of services" requirements of G.S. 160A-35(3). In addition, petitioners argue that the ordinance must be held invalid due to the nonoccurrence of what they contend is a condition precedent to its validity. For the reasons stated, we affirm the judgment of the superior court upholding the annexation ordinance.

The scope of judicial review of an annexation ordinance adopted by the governing board of a municipality is prescribed and defined by statute. G.S. 160A-38(f) (Annexation by Cities of Less than 5,000); G.S. 160A-50(f) (Annexation by Cities of 5,000 or More). These statutes limit the court's inquiry to a determination of whether applicable annexation statutes have been substantially complied with. *In re Annexation Ordinance (Winston-Salem)*, 303 N.C. 220, 278 S.E. 2d 224 (1981). When the record submitted in superior court by the municipal corporation demonstrates, on its face, substantial compliance with the applicable annexation statutes, then the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights. *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 265 S.E. 2d 123 (1980).

> In determining the validity of an annexation ordinance, the court's review is limited to the following inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners suffer material injury thereby? (3) Does the area to be annexed meet the requirements of G.S. 160A-48 [G.S. 160A-36 with respect to annexation by cities with populations of less than 5,000]?

*Trask v. City of Wilmington*, 64 N.C. App. 17, 28, 306 S.E. 2d 832, 838 (1983), *disc. rev. denied*, 310 N.C. 630, 315 S.E. 2d 697 (1984). The findings of fact made by the trial court are binding on the appellate court if supported by competent evidence, even if there is evidence to the contrary; conclusions of law drawn from the findings of fact are, however, reviewable *de novo*. *Humphries v. City*

*of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980); *Food Town Stores v. City of Salisbury, supra.*

In the present case, petitioners have stipulated that the Town complied with all of the procedural requirements of G.S. 160A, Article 4A, Part 2 (Annexation by Cities of Less than 5,000) in adopting the annexation ordinance. They contend, however, that the proposed annexation does not meet the requirements of G.S. 160A-36(b) and (c) with respect to the character of the area to be annexed, and that the Town's plan for extending police and fire protection to the area does not satisfy the requirements of G.S. 160A-35(3)a.

[1]  G.S. 160A-36(b)(1) and (2) provide:

(b) The total area to be annexed must meet the following standards:

(1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.

(2) At least one-eighth of the aggregate external boundaries of the area must coincide with the municipal boundaries.

The term "contiguous area" means

any area which, at the time annexation procedures are initiated, either abuts directly on the municipal boundary or is separated from the municipal boundary by a street or street right-of-way, a creek or river, the right-of-way of a railroad or other public service corporation, lands owned by the municipality or some other political subdivision, or lands owned by the State of North Carolina.

G.S. 160A-41. The Southside Area Annexation Report and the annexation ordinance both recite that the annexation meets the one-eighth coincidence requirement of the statute in that the aggregate external boundary line of the total area to be annexed is 45,202.85 feet, of which 6,364.9 feet coincide with the existing Town boundary. Evidence at the hearing disclosed, however, that the distances contained in the report and ordinance had been incorrectly calculated by the surveyor employed by the Town. The actual aggregate external boundary of the total area to be annexed is 39,717.33 feet, of which 5,761.93 feet coincide with the ex-

isting Town boundary. The error in calculation is of no consequence because the corrected measurements yield a percentage of coincidence of 14.5%, clearly sufficient to meet the statutory requirement.

Petitioners argue, however, that the method used by the Town to meet the statutory requirement of coincidence was, in fact, a "sham and subterfuge" which was actually designed to evade the statutory standard. They argue that the Town's real objective in this annexation proceeding is the annexation of the "Forestville Area" which contains the industrial and commercial facilities of the four corporate petitioners and the residences of the individual petitioners. The "Forestville Area" is contiguous to the Town's pre-annexation southern boundary, but coincides with the Town's boundary for only 1,429.33 feet, an insufficient distance to meet the one-eighth coincidence requirement. Therefore, according to petitioners' argument, the Town included two additional areas, neither of which would independently meet the "urban purposes" requirement of G.S. 160A-36(c), within the proposed annexation area. The first of these areas is a strip of land 40 feet wide and 2,005.08 feet in length comprising the eastern half of a Seaboard Coastline Railroad right-of-way. This strip is connected to the northeast corner of the "Forestville Area" and coincides with the existing Town boundary for 2,005.08 feet, the western half of the railroad right-of-way having been previously annexed by the Town. The second area is an undeveloped wedge-shaped area of land at the northern end of the "railroad strip," which adjoins the southern boundary of the Town for a distance of 2,327.52 feet. It is connected to the "Forestville Area" only by the "railroad strip." Together, the areas have sufficient coincidence of boundary with the existing Town boundary to satisfy the one-eighth requirement of G.S. 160A-36(b)(2). The Town Administrator and the Town Planner both acknowledged that at least one of the purposes of including these areas in the area proposed for annexation was to meet the statutory requirement for coincidence of boundary.

Petitioners urge that the inclusion of these two areas with the "Forestville Area" in order to meet the coincidence of boundary requirement is contrary to the intent of the annexation statutes and is impermissible. Therefore, they contend that the

superior court erred in finding and concluding that the Town had complied with G.S. 160A-36(b)(2).

Petitioners cite us to cases from other jurisdictions which disapprove of "gerrymandered" or "shoestring" annexation. *See, e.g., Clarke v. Holt*, 218 Ark. 504, 237 S.W. 2d 483 (1951); *Ridings v. Owensboro*, 383 S.W. 2d 510 (Ky., 1964); *Mount Pleasant v. Racine*, 24 Wis. 2d 41, 127 N.W. 2d 757 (1964). However, those cases involve the use of narrow corridors of land to connect the proposed area for annexation to the municipality, resulting in a lack of contiguity. They are not applicable to the facts before us. In the present case, each of the three portions included in the proposed annexation area is contiguous to the existing Town boundary, and, by using the "railroad strip" as a connector, they are contiguous to each other. The connection of two portions of an annexation area through a "30-foot wide umbilical cord" has been implicitly held sufficient to be considered contiguous pursuant to G.S. 160A-36(b)(1). *See Hawks v. Town of Valdese*, 299 N.C. 1, 261 S.E. 2d 90 (1980). Moreover, the entire area proposed for annexation must be viewed as a whole, rather than as various component portions into which petitioners have sought to divide it. When so viewed as an entire area, it is apparent that the Southside area is contiguous to the boundaries of the Town as they existed at the commencement of the annexation proceedings and that the required coincidence of boundaries exists. When these statutory requirements have been satisfied, the intent of the legislature with respect to the sufficiency of contiguity for annexation has been achieved. *See Humphries v. City of Jacksonville, supra.* Petitioners have failed to carry their burden to show noncompliance with G.S. 160A-36(b).

[2] Petitioners next assign error to the superior court's finding that the area proposed for annexation complies with the "urban purposes" requirement contained in G.S. 160A-36(c). That section provides:

> (c) The area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is sub-

divided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

G.S. 160A-36(c). The "urban purpose" requirement contains two tests for determining whether an area is suitable for annexation:

(1) *the use test* — that not less than 60% of the lots and tracts in the area must be in actual use, other than for agriculture, and

(2) *the subdivision test* — not less than 60% of the acreage which is in residential use, if any, and is vacant must consist of lots and tracts of five acres or less in size. (Emphasis original.)

*Lithium Corp. v. Bessemer City*, 261 N.C. 532, 538, 135 S.E. 2d 574, 579 (1964). Both tests must be met in order to satisfy the requirements of the statute. *Id.*

The superior court found that the area proposed for annexation met both tests. With respect to compliance with the "subdivision test," the court found:

9. The Court finds that the Town of Wake Forest in making its computation for acreage use in the proposed annexation area as required by N.C. Gen. Stat. 160A-36(c) excluded the lots and tracts used for commercial, industrial, governmental or institutional purposes. The Court finds that the remaining land after such exclusion is subdivided into lots and tracts such that more than sixty percent (60%) of the total of the remaining acreage consists of lots and tracts five acres or less in size.

Petitioners except to the finding, contending that a number of the lots or tracts excluded as being used for the specified purposes were not, in fact, used for such purposes.

The area proposed for annexation contains a total of 402.36 acres. The Town calculated that 97.69 acres were used for industrial, commercial, institutional or governmental purposes, and that of the remaining acreage, 197.89 acres, or 64.9%, are in lots or tracts 5 acres or less in size. Citing *Southern Railway Co. v.*

*Hook*, 261 N.C. 517, 135 S.E. 2d 562 (1964), petitioners contend that portions of tracts owned by B F & F Associates, Huyck Corporation, Neuse Plastic Company, Athey Products Corporation, and Forestville Baptist Church, classified by the Town as "used" for the specified purposes, were not in actual use for those purposes. They argue that had these tracts been correctly classified, the area proposed for annexation would not comply with the "subdivision test" prescribed by G.S. 160A-36(c). We reject their argument.

The question of whether land has been properly classified as to use within the meaning of the annexation statute depends upon the particular facts of each case. *Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 293 S.E. 2d 240, *disc. rev. denied,* 306 N.C. 559, 294 S.E. 2d 371 (1982). *Southern Railway Co. v. Hook, supra,* upon which petitioners rely, is factually distinguishable. In that case, the tract in question consisted of approximately 14 acres which was located across a highway from the primary industrial plant of Ideal Industries, Inc. A little more than one acre was used for employee parking; the balance of the tract had been graded but was otherwise unimproved and there was no evidence of its use, directly or indirectly, for industrial purposes. It was held by Ideal for possible future industrial use. The Court held that only the portion of the tract used for parking could be classified as an industrial lot; the remaining acreage was classified as unused. In the present case, however, the sub-tracts which petitioners contend should be classified as unused are contiguous to, and actually portions of, larger tracts used for commercial, industrial and institutional purposes.

The standard argued by petitioners in this case would permit only those specific portions of an industrial, commercial, institutional or governmental tract which are actually under roof or pavement to be considered as "used" for purposes of annexation. Such a standard is clearly unreasonable, is beyond the requirement of G.S. 160A-36(c), and has been rejected by our Supreme Court in *Food Town Stores v. City of Salisbury, supra.* See *Scovill Mfg. Co. v. Town of Wake Forest, supra.*

The Town utilized current Wake County tax maps and records, land use maps, and personal observations in estimating the degree of subdivision in the annexation area. These methods have

been approved as "methods calculated to provide reasonably accurate results" by the General Assembly, see G.S. 160A-42, and by this Court. *Tar Landing Villas v. Town of Atlantic Beach*, 64 N.C. App. 239, 307 S.E. 2d 181 (1983), *disc. rev. denied*, 310 N.C. 156, 311 S.E. 2d 296 (1984); *Scovill Mfg. Co. v. Town of Wake Forest*, *supra*. We deem it unnecessary to repeat the evidence presented to the superior court with respect to each of the tracts and subtracts which petitioners contend to have been improperly classified. Suffice it to say that, with four exceptions, each tract, as identified by the tax maps and records, contains improvements used by the industry, business, or institution occupying the land so that each tract, as a whole, may be said to be in use for the specified purpose. The four exceptions are lots belonging to the Wake Forest Fire Department, James T. Hoy, Jr. and wife, Luda E. Box and Horsecreek Associates. In our view, the evidence is not sufficient to show that these lots are in use for one of the specified purposes. However, the improper classification of these lots, comprised of 6.17 acres, is of no consequence to the validity of the annexation ordinance because, even if reclassified correctly as not in use, the "subdivision test" of G.S. 160A-36(c) would still be satisfied. We hold that there was sufficient competent evidence to support the superior court's finding that the area proposed for annexation was "developed for urban purposes" as required by G.S. 160A-36(c).

[3] Petitioners next argue that the Town has failed to meet the extension of municipal services requirement as found in G.S. 160A-35(3)a, as to police and fire protection services. The statute, at the time of the annexation proceedings, provided:

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-37, prepare a report setting forth such plans to provide services to such area. The report shall include:

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending police protection, fire protection, garbage collection and street maintenance

services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. A contract with a rural fire department to provide fire protection shall be an acceptable method of providing fire protection. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines.

G.S. 160A-35(3)a (1982), as amended by 1983 Sess. Laws, c. 636, s. 16. The purpose of these requirements

is to assure that, in return for the added financial burden of municipal taxation, the residents receive the benefits of all the major services available to municipal residents. The minimum requirements of the statute are that the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services. (Citations omitted.)

*In re Annexation Ordinance (Charlotte)*, 304 N.C. 549, 554, 284 S.E. 2d 470, 474 (1981).

The Southside Area Annexation Report-Services Plan approved by the Wake Forest Board of Commissioners contained plans for extending police and fire protection to the area proposed for annexation. With respect to police protection services, the plan recited that the Town employs thirteen full time police personnel and will add three officers as a result of annexation. Additional costs will be paid by the Town's general fund. Twenty-four hour patrol protection is provided within the existing Town limits and will be extended to the area proposed for annexation. With respect to fire protection services, the plan recites that fire protection is currently provided to the Town and to the area proposed for annexation by the Wake Forest Volunteer Fire Department. The Town has contracted with the department to provide

fire protection services within the Town limits, so that the annexation area would continue to be served by the volunteer fire department. The additional costs will be paid from the Town's general fund.

Petitioners contend that the addition of three police officers, whose duties will extend to the existing Town as well as to the annexation area, will not provide substantially the same service to the annexed area as is currently provided the Town. However, they have offered no substantial evidence in support of that contention. On the other hand, the Town's evidence shows that the addition of three officers will improve the ratio of police officers to population from the current ratio of 1:424.2 to an after-annexation ratio of 1:377.08.

With respect to fire protection, petitioners argue that due to the location of the fire station, the department will not be able to respond to the annexed area as quickly as it can respond to a fire within the existing Town limits. However, the plan indicates that all of the area proposed for annexation is within a distance of not less than 0.9 road miles, nor more than 3.1 road miles, from the fire station. The plan indicates that *substantially* the same fire protection service will be provided to the Southside area as is currently provided to the Town.

We hold that the Town's plans for providing police and fire protection services are sufficient to satisfy the requirements of G.S. 160A-35(3)a. The plans contained (1) information with respect to the current level of services within the Town, (2) a commitment to provide substantially the same level of services in the annexation area, and (3) information as to how the extension of services will be financed; this information is sufficient to allow the public and the courts to determine that the Town has committed itself to provide a nondiscriminatory level of services to the annexed area and to establish compliance with G.S. 160A-35(3)a. *In re Annexation Ordinance (Charlotte), supra.* These assignments of error are overruled.

[4] Finally, petitioners contend that the annexation ordinance contained a condition precedent to its validity, the nonoccurrence of which renders the ordinance invalid and void. Section 4 of the ordinance provides:

That the Board of Commissioners does hereby specifically find and declare that, on the effective date of annexation prescribed in Section 1 hereof, the Town of Wake Forest will have sufficient funds appropriated in the amount of $698,000.00, to finance the estimated cost of construction of water and sewer facilities found necessary in the report of plans for services to extend the basic sewer and water system of the Town of Wake Forest, into the area to be annexed under this ordinance. The foregoing is contingent upon the successful approval of a bond referendum in the amount stated above, which is scheduled for the 13th day of November, 1984.

The bond election referred to in the ordinance was actually held on 6 November 1984. Although the bond proposal for water extension costs passed, the bond proposal for sewer extension costs did not pass. However, a special bond referendum was held on 3 December 1985, resulting in the passage of water and sewer bonds in the total amount of $800,000.00, sufficient to fund the water and sewer extensions to the area to be annexed pursuant to the ordinance. Petitioners contend, however, that passage of the November 1984 bond referendum was expressly made a condition precedent to the validity of the ordinance. We disagree.

G.S. 160A-37(e)(3) requires that an annexation ordinance shall contain:

A specific finding that on the effective date of annexation the municipality will have funds appropriated in sufficient amount to finance construction of any water and sewer lines found necessary in the report required by G.S. 160A-35 to extend the basic water and/or sewer system of the municipality into the area to be annexed, or that on the effective date of annexation the municipality will have authority to issue bonds in an amount sufficient to finance such construction. If authority to issue such bonds must be secured from the electorate of the municipality prior to the effective date of annexation, then the effective date of annexation shall be no earlier than the day following the statement of the successful result of the bond election.

Section 4 of the annexation ordinance in the present case was a specific finding that funds necessary for water and sewer con-

struction would be available as of the effective date of the ordinance. The finding was made contingent upon the passage of the bond referendum in the necessary amount. However, contrary to petitioners' argument, the validity of the ordinance was not contingent upon the passage of a referendum on the specified date, but was contingent only upon the Town's having the necessary funds appropriated as of the effective date of the ordinance. The ordinance was originally scheduled to take effect on 31 December 1984. However, the petition for review to the superior court and appeal to this Court have, by operation of law, amended the ordinance so as to make its effective date the date on which a final judgment in this case has been certified. G.S. 160A-38(i). Because a bond referendum has since permitted the Town to raise the requisite funds before the effective date of the ordinance, the contingency contained in Section 4 has been satisfied. This assignment of error is overruled.

In summary, we hold that the superior court properly found and concluded that respondent has complied with all statutory requirements for involuntary annexation by a municipality with a population of 5,000 or less. Its judgment is

Affirmed.

Judges ARNOLD and GREENE concur.