SONOPRESS, INC., Petitioner-Appellant v. TOWN OF WEAVERVILLE,
Respondent-Appellee

No. COA01-105

(Filed 2 April 2002)

**1. Cities and Towns— annexation—reporting requirements— map—police protection—street maintenance—method of financing**

The trial court did not err in an annexation case in its findings and conclusions that the town complied with the reporting requirements of N.C.G.S. § 160A-35 except with respect to the plans for providing sanitation services to properties located within the annexed area, because: (1) petitioner offered no specific evidence to rebut the trial court's findings and conclusions regarding the map requirement, other than to argue that the maps were confusing and illegible, and the town did not need to submit a sealed map under N.C.G.S. § 160A-35(1)b since an extension of water and sewer services was not required; (2) the town met the substantive requirements of N.C.G.S. § 160A-35(2) by providing a statement showing the area to be annexed meets the requirements of N.C.G.S. § 160A-36; (3) the town's statement regarding police protection was adequate to satisfy the statutory requirements since town police officers already drive past petitioner's property to patrol the satellite annexation area and the town could reasonably claim that no additional patrol officers would be needed to protect the newly annexed areas; (4) the trial court's conclusion that the town's statement regarding street maintenance satisfied the statutory requirements since the property proposed to be annexed already has the streets maintained by the State; and (5) the trial court's finding that the town does not need to set out a method for financing was supported by competent evidence in the record that no extension of services will be required due to the annexation.

**2. Cities and Towns— annexation—sanitation services**

The trial court did not err in an annexation case by concluding that the town's failure to comply with N.C.G.S. § 160A-35 on the issue of sanitation services can be remedied upon remand without further public hearing and comment, because: (1) the trial court simply remanded the issue to more fully and adequately explain the town's sanitation policy in accordance with

N.C.G.S. § 160A-35; and (2) petitioner had sufficient notice and an opportunity to be heard at the first public hearing on the issue of sanitation services, and the clarification of the town's policy is not a substantial change since it does not raise new issues not previously addressed by the parties.

**3. Cities and Towns— annexation—tax record classifications—use of land**

The trial court did not err in an annexation case by finding that the town complied with N.C.G.S. § 160A-36 when it used tax records and land use maps to show the percentage of development of the annexed area, because: (1) both the General Assembly and our Court of Appeals have approved the use of tax records and land use maps as accepted methods designed to provide reasonably accurate results regarding the area to be annexed; (2) the town has met the statutory requirement under N.C.G.S. § 160A-36(c)(1) that at least sixty percent of the total number of lots and tracts are used for residential, commercial, or industrial purposes; and (3) petitioner has failed to provide evidence that the tax record classifications are incorrect or that the parcels are not in fact in use for these purposes.

**4. Cities and Towns— annexation—statement of intent to provide services**

The trial court did not err in an annexation case by finding that the town complied with N.C.G.S. § 160A-37(e)(2) which requires that an annexation ordinance shall contain a statement of the intent of the municipality to provide services in the area being annexed as set forth in the report required by N.C.G.S. § 160A-35.

**5. Cities and Towns— annexation—notice requirements**

The trial court did not err in an annexation case by finding that petitioner was not materially prejudiced based on the town's alleged failure to comply with the map requirements under the notice statute of N.C.G.S. § 160A-37 and by refusing to grant petitioner's request for a delay, because: (1) the local newspaper published the public notice of a public hearing on the annexation of petitioner's property on two separate dates prior to the hearing; (2) although the map in the newspaper was deemed illegible, the notice contained a detailed description of the property and identified the owners or former owners of the property being considered for annexation; (3) the public notice stated that the

report required by N.C.G.S. § 160A-35 would be available at the office of the town clerk thirty days prior to the date of the public hearing, and the town clerk certified that the report available to the public included a legible map of the area to be annexed; and (4) although petitioner asked the town to delay the annexation matter, petitioner had sufficient time to review the standards of service report in the town clerk's office and petitioner's needs are not at issue in this annexation proceeding, but rather whether the town complied with all statutory requirements.

Appeal by petitioner from order entered 16 October 2000 by Judge James L. Baker, Jr. in Superior Court, Buncombe County. Heard in the Court of Appeals 29 November 2001.

*Dungan & Mitchell, P.A., by Robert E. Dungan, for petitioner-appellant.*

*Roberts & Stevens, P.A., by Carl W. Loftin and Christopher Z. Campbell, for respondent-appellee.*

McGEE, Judge.

The Weaverville Town Council (Town) unanimously adopted an ordinance extending the Town's corporate boundaries to include property owned by Sonopress, Inc. (petitioner) on 18 May 1998. Petitioner filed a Petition of Review and Appeal in Superior Court, Buncombe County on 16 June 1998. The trial court entered an order affirming the annexation on 5 October 1998. Petitioner appealed, and this Court issued an opinion on 1 August 2000 concluding that the trial court applied an improper standard of review, vacating the order of the trial court, and remanding the case for reconsideration under the correct standard of review. *Sonopress, Inc. v. Town of Weaverville,* 139 N.C. App. 378, 533 S.E.2d 537 (2000).

Upon remand, the trial court entered an order dated 16 October 2000 upholding the annexation ordinance, except as to the issue of sanitation services, which the trial court remanded to the Weaverville Town Council. Petitioner appeals this order.

"Where the record upon judicial review of an annexation proceeding demonstrates substantial compliance with statutory requirements by the municipality, the burden is placed on petitioners to show by competent evidence a failure to meet those requirements or an irregularity in the proceedings which resulted in material preju-

dice[.]" *Scoville Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 17-18, 293 S.E.2d 240, 243 (1982), *disc. review denied*, 306 N.C. 559, 294 S.E.2d 371 (1982); *see also, Conover v. Newton and Allman v. Newton and In re Annexation Ordinance*, 297 N.C. 506, 256 S.E.2d 216 (1979) (because public officials act in the public interest, there is a rebuttable presumption of regularity, and that presumption will prevail until the petitioner puts forth sufficient evidence to the contrary). When reviewing an annexation ordinance, the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if evidence to the contrary exists. *Amick v. Town of Stallings*, 95 N.C. App. 64, 69, 382 S.E.2d 221, 225 (1989) (citing *Hyuck Corp. v. Town of Wake Forest,* 86 N.C. App. 13, 15, 356 S.E.2d 599, 609 (1987), *aff'd per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988)). However, the trial court's conclusions of law based upon these findings are reviewable *de novo. Id.*

## I.

Petitioner contends by its first assignment of error that the trial court erred in affirming the Town's annexation ordinance because the Town violated N.C.G.S. §§ 160A-35, -36 & -37. Because this assignment of error is simply a summary of petitioner's entire argument, we proceed to petitioner's remaining assignments of error.

## II.

[1] By its second assignment of error, petitioner contends that the trial court erred in its findings and conclusion that the Town complied with N.C.G.S. § 160A-35, except with respect to plans for providing sanitation services to properties located within the annexed area.

N.C. Gen. Stat. § 160A-35 (Cum. Supp. 1998), entitled "Prerequisites to annexation; ability to serve; report and plans[,]" requires that prior to annexation a municipality "shall make plans for the extension of services to the area proposed to be annexed and shall . . . prepare a report setting forth such plans to provide services to [the annexed] area." Petitioner argues that the Town failed to meet the report requirements in three ways.

### A. Map Requirement

First, petitioner contends the Town failed to comply with the map requirements of N.C.G.S. § 160A-35(1). N.C. Gen. Stat. § 160A-35(1)a., b. (Cum. Supp. 1998) requires that the report shall include

(1) A map or maps of the municipality and adjacent territory to show the following information:

   a. The present and proposed boundaries of the municipality.

   b. The proposed *extensions* of water mains and sewer out-falls to serve the annexed area, if such utilities are operated by the municipality. The water and sewer map must bear the seal of a registered professional engineer or a licensed surveyor.

(emphasis added).

The trial court's findings of fact included

11. That the report prepared by the Town . . . pursuant to Section 160A-35 with reference to the proposed annexation of the property of [petitioner] and adjacent property, entitled "Standards of Service Report" . . . contained a legible map and legal description of the property to be annexed. The report was amended . . . to include a legible map of the municipal boundaries of the Town . . . as required by G.S. Sec. 160A-35(1).

The trial court concluded that the maps included in the Town's Standards of Service Report adequately complied with the statutory map requirement.

Petitioner argues that the Town failed to meet the "present and proposed boundaries" requirement because "both maps included in the [Standards of Service] report are illegible, defective, and deficient, and that even upon a strained attempt to read the maps, [they] remain illegible[.]"

A review of the maps at issue, as reprinted in the record, shows a map indicating the "Current Town Limits," the "Area of Proposed Annexation" and the "Current Town Limits of Satellite Annexation," as well as major roads and property boundaries clearly marked. Petitioner offers no specific evidence to rebut the trial court's findings and conclusions, other than to argue that the maps were confusing and illegible. The Town complied with the requirements of the statute.

Petitioner also argues the Town did not meet the map requirement because it did not submit a "sealed map from a registered professional engineer or a licensed surveyor showing water mains to serve the annexed area as required by N.C. Gen. Stat. § 160A-35(1)b." This argument also fails because N.C.G.S. § 160A-35(1)b. requires

a sealed map only if a municipality plans to *extend* water and sewer into an annexed area. As the trial court noted in its findings, petitioner already received water from the Town and sewer services from the Metropolitan Sewerage District of Buncombe County. Therefore, the Town did not need to submit a sealed map because an extension of water and sewer services was not required. We agree with the trial court that the Town sufficiently met the statutory map requirement.

## B. Statement

Petitioner next contends that the Town failed to meet the requirement of N.C.G.S. § 160A-35(2) that the Town issue a statement showing that the area to be annexed meets the requirements of N.C.G.S. § 160A-36.

The trial court found that the Standards of Service Report "contains a statement showing that the area to be annexed meets the requirements of G.S. Sec. 160A-36." The trial court concluded that this statement was supported by "sufficient data from which these conclusions could be reached."

Petitioner argues that the Town cannot comply with this statutory requirement "simply by reciting the requirements of the applicable statutory language[.]" Instead, petitioner contends the Town must "include specific findings or a showing on the face of the record that the area to be annexed is developed for urban purposes."

As discussed below in Part IV, we agree with the trial court that the Town met the substantive requirements of N.C.G.S. § 160A-36.

## C. Extension of municipal services

Petitioner further contends that the Town failed to sufficiently set forth its plans to extend major municipal services to the annexed property. Specifically, petitioner claims that the Town's Standards of Service Report inadequately describes how police protection and street maintenance will be provided, as well as how the municipal services in the newly annexed areas will be financed.

N.C. Gen. Stat. § 160A-35(3)a. (Cum. Supp. 1998) requires that municipalities "[p]rovide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed . . . on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." Thus, at a minimum, the

municipality must provide information "sufficient to allow the public and the courts to determine that the Town has committed itself to provide a nondiscriminatory level of services to the annexed area." *Hyuck*, 86 N.C. App. at 23, 356 S.E.2d at 599. This information should include "(1) information with respect to the current level of services within the Town, (2) a commitment to provide substantially the same level of services in the annexation area, and (3) information as to how the extension of services will be financed." *Id.*

### 1. Police protection

Petitioner argues that the Town's description of police services to be provided to the annexed area is *prima facie* inadequate and the trial court erred in finding the Town's Standards of Service Report complied with the statute. As to police service, the Town's Standards of Service Report states that

The proposed annexed property will be provided Police Service by the Weaverville Police Department. This annexation will not require additional officers. Currently, this area is protected by the Buncombe County Sheriff Department.

. . .

The Town of Weaverville will begin to provide Police service to the area. While the Town of Weaverville is currently in the process of expanding the Police Department by two officers in FY 1998-1999, we do not anticipate a major increase of police activity due to this annexation.

The trial court found as fact:

22. That the Standards of Service Report . . . sets forth . . . plans for extending police protection to the area to be annexed on substantially the same basis and in the same manner as police protection is provided in the Town[.] The "Service Plan" states that police service can be provided by the Town . . . without any additional officers. The "Service Plan" regarding police protection, to be furnished to the annexed area at no additional cost to the Town, meets the requirements of G.S. Sec. 160A-35(3)(a).

The trial court concluded that the Town's statement in the Standards of Service Report regarding police protection was adequate to satisfy the statutory requirements.

SONOPRESS, INC. v. TOWN OF WEAVERVILLE

[149 N.C. App. 492 (2002)]

Petitioner contends that the statements by the Town in the Standards of Service Report are insufficient to support the findings of the trial court. Petitioner relies on a number of cases where our courts approved annexation reports that included more information than what was provided in this case by the Town in its Standards of Service Report. Petitioner contends that the Town's report is "fatally lacking" simply because our courts have approved annexation reports that give more information than what the statute mandates. Petitioner, however, fails to cite any case law or statute that establishes the minimum requirements for descriptions of how police services will be provided to an annexed area. Our Supreme Court has held that a report is not deficient simply because it fails to specify "the number of additional personnel and the amount of additional equipment which will be required to extend services to the annexed area." *Annexation Ordinance*, 304 N.C. at 554, 284 S.E.2d at 474.

Petitioner also argues that the record contains substantial and competent evidence of a need for greater police protection than what the Town proposed, and this evidence is sufficient to overcome a finding that the Town's plan complies with the statute. Petitioner contends that because it employs 850 people and the Town has only 2,100 residents, that the annexation will increase the "service area" of the Town by thirty-five percent. Petitioner cites no authority for calculating service areas in this manner. To the contrary, the Town stated at oral argument, and the map reprinted in the Standards of Service Report shows, that petitioner's property is actually located between the current Town boundaries and an existing satellite annexation. Because Town police officers already drive past petitioner's property to patrol the satellite annexation area, the Town could reasonably claim in its Standards of Service Report that no additional patrol officers would be needed to protect the newly annexed areas.

As further support for its argument, petitioner cites a fifty-nine percent increase in crime in 1998 from the previous year. The crime statistic which amounts to forty additional crimes within one year is, by itself, insufficient to demonstrate that the Standards of Service Report is not adequate or that the Town did not comply with the statute.

The record before us contains evidence supporting the Town's statement that additional officers are not required due to the proposed annexation, and petitioner has not directed us to evidence in the record that the service would be inadequate. Therefore, we find

the evidence sufficient to support the trial court's conclusion that the Town's statement was adequate.

### 2. Street maintenance

Petitioner next argues that the Standards of Service Report inadequately describes how street maintenance will be provided in the annexed areas. The report states that "[t]he property proposed to be annexed is located on Alexander Road and Monticello Road, which are State of North Carolina roads with maintenance being provided by North Carolina Department of Transportation. This will not change."

The trial court found that the provision of the Service Plan contained in the Standards of Service Report relating to street maintenance met the provisions of N.C.G.S. § 160A-35(3)a. The trial court then concluded that "[t]here was no necessity for the Town to provide for street maintenance as the roadways serving the property are State maintained."

Petitioner argues that *In re Annexation Ordinance*, 255 N.C. 633, 122 S.E.2d 690 (1961), states that a town has the primary responsibility for street maintenance and that it cannot delegate that duty to the N.C. Department of Transportation (NCDOT). However, in that case, our Supreme Court found that the statute in question required only that the municipality must in good faith provide services "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." *Id.* at 645, 122 S.E.2d at 699 (discussing N.C. Gen. Stat. § 160-453.15 which has been repealed and transferred. *See now* N.C. Gen. Stat. § 160A-47 discussing preparation of an annexation report for cities of 5,000 or more). In the case before us, the Standards of Service Report states that NCDOT has and will continue to have responsibility for street maintenance. We find sufficient evidence to support the trial court's conclusion that the Town's statement regarding street maintenance satisfies the statutory requirements.

### 3. Method of Financing

Further, petitioner argues that the method of financing proposed in the Standards of Service Report is inadequate to meet the statutory requirements. N.C. Gen. Stat. § 160A-35(3)c. (Cum. Supp. 1998) requires that the plan "[s]et forth the method under which the municipality plans to finance *extension* of services into the area to be annexed." (emphasis added). The trial court found as fact:

SONOPRESS, INC. v. TOWN OF WEAVERVILLE

[149 N.C. App. 492 (2002)]

34. That the Standards of Service Report includes specific findings that additional funding will not be necessary for the annexation of the property of [petitioner] . . . in that the report details the revenue to be realized and shows as follows:

a) Fire service will be extended to the property on substantially the same basis and in the same manner as fire service is provided in the Town . . . at no additional cost to the Town;

b) Police service will be extended to. the property on substantially the same basis and in the same manner as police service is provided in the Town . . . at no additional cost to the Town;

c) Water service will be extended to the property on substantially the same basis and in the same manner as water service is provided in the Town . . . at no additional cost to the Town;

d) Sanitation pick-up service will be extended to the property on substantially the same basis and in the same manner as sanitation pick-up service is provided in the Town . . . at no additional cost to the Town;

e) Sewer service will be provided by the Metropolitan Sewerage District of Buncombe County at no cost to the Town; and

f) Street maintenance will be [provided] by the North Carolina Department of Transportation at no cost to the Town.

Therefore, the Town does not need to set forth the method under which the municipality plans to finance the extension of services into the area to be annexed in accordance with G.S. Sec. 160A-35(3)(c). The Town has complied with G.S. Sec. 160A-35(3)(c).

The trial court concluded that the Town "was under no obligation to set forth any method by which it proposed to finance any extension of services into the area since the Town adequately demonstrated that each of the services to be performed could be provided at no additional cost to the Town."

Petitioner argues this conclusion is in error because "the abundance of case law directly contradicts" the trial court's finding that

the Town need not set forth the method by which it plans to finance the extension of services. Further, petitioner argues that it has offered competent and substantial evidence to rebut the Town's claims that there is no need to extend services.

Petitioner contends that by not explaining how the Town will fund extending street and police services into an area as large as the annexed area, relative to the overall size of the Town, without additional funding or additional personnel "defies all mathematical probability" and, therefore, the Town has failed to show any real financing methodology.

We disagree. The trial court's findings that the Town does not need to set out a method for financing is supported by competent evidence in the record that no extension of services will be required due to the annexation. The statute clearly requires a financing statement if there is "extension" of services, and because there is no "extension" in this case, the trial court did not err in finding that no financing statement is required.

The trial court's findings of fact pursuant to N.C.G.S. § 160A-35 are supported by competent evidence in the record and support the trial court's conclusions of law. Petitioner's second assignment of error is overruled.

III.

[2] Petitioner argues by its third assignment of error that the trial court erred in concluding that the Town's failure to comply with N.C.G.S. § 160A-35 on the issue of sanitation services can be remedied upon remand without further public hearing and comment.

In referring to sanitation services, the Standards of Service Report stated incorrectly that "[t]he Town does not provide sanitation services to industrial or commercial properties [anywhere] within the municipal boundaries of the Town." The trial court concluded that:

> [T]he Standards of Service Report and the "Service Plan" contained therein sets forth an incorrect statement regarding the proposed extension of sanitation services into the area to be annexed. The Standards of Service Report does not adequately set forth that the Town would and does pick up garbage and refuse from commercial and industrial establishments provided

that such refuse is placed in not more than six (6) receptacles or in polyethylene bags[.]

Although the Standards of Service Report "failed to fully set forth the Town's policies regarding sanitation" services, the trial court did not order a new public hearing but instead remanded this issue to the Town "to more fully and adequately set forth the Town's policy regarding sanitation services and the proposed extension of such services into the area of annexation." A municipal governing board has the "authority to amend the report required by G.S. 160A-35 to make changes in the plans for serving the area proposed to be annexed so long as such changes meet the requirements of G.S. 160A-35." N.C. Gen. Stat. § 160A-37(e) (Cum. Supp. 1998). "There is no requirement that a second public hearing be held on an amended annexation proposal, when that amendment is adopted to achieve compliance with G.S. 160A-35[.]" *Gregory v. Town of Plymouth*, 60 N.C. App. 431, 432-33, 299 S.E.2d 232, 234, *disc. review denied*, 308 N.C. 544, 304 S.E.2d 237 (1983). However, if "substantial changes are made in the amended plan that are not a part of the original notice of public hearing and are not provided for in the plans for service[,]" another public hearing is required. *Id.* at 433, 299 S.E.2d at 234.

Petitioner argues that because the Town's original report did not even contemplate providing sanitation services to Petitioner, that any change by the Town upon remand is a "one-hundred-eighty-degree change" and therefore a substantial change to the original annexation ordinance requiring a public hearing. Respondent, on the other hand, contends the trial court did not err in remanding the issue of sanitation services because the amendment is simply a "clarification of the Town's policy" in order to comply with N.C.G.S. § 160A-35.

We agree the trial court did not err in remanding this issue without a new public hearing because it simply remanded the issue to "more fully and adequately" explain the Town's sanitation policy in accordance with N.C.G.S. § 160A-35. The record shows that the issue of sanitation services was included in the original Standards of Service Report, albeit incorrectly, and was referred to in the Notice of Public Hearing. Thus petitioner had sufficient notice and an opportunity to be heard at the first public hearing on the issue of sanitation services, and the clarification of the Town's policy is not a "substantial change" because it does not raise new issues not previously addressed by the parties. Petitioner's third assignment of error is overruled.

IV.

[3] By its fourth assignment of error, petitioner contends the trial court erred in finding that the Town complied with N.C.G.S. § 160A-36 which states that

[t]he area to be annexed must be developed for urban purposes . . . [which is] defined as: (1) Any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size.

N.C. Gen. Stat. § 160A-36(c)(1) (Cum. Supp. 1998). Although a town must meet both the "use" and "subdivision" tests in the statute in order to expand its corporate limits, in this case petitioner only disputes the first, or "use" test; therefore we will only address this issue on appeal. *Tar Landing Villas v. Town of Atlantic Beach*, 64 N.C. App. 239, 246, 307 S.E.2d 181, 186 (1983).

The Town stated in its "Determination of Eligibility" report that:

(1) Sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional, or governmental purposes.

All (100%) [of] the property in the area to be annexed is in use for residential or industrial or commercial use.

The trial court found

[t]hat the "Determination of Eligibility" set forth in the Standards of Service Report shows that the property to be annexed is developed for urban purposes in that the report contains a specific finding that 100% of the property of the area is in use for residential, industrial or commercial use.

The trial court also found that petitioner "offered no evidence to refute the specific findings, statistics, and information set forth in the 'Determination of Eligibility' portion of the Standards of Service Report." The trial court concluded that the Town properly included a statement that it complied with N.C. Gen. Stat. § 160A-36.

Petitioner argues that the Town did not make specific findings to show its compliance with N.C.G.S. § 160A-36. Specifically, petitioner claims (1) that the Town ordinance failed to refer to the method it used to calculate the percentage of development, (2) the map included in the record failed to show upon which lots or tracts buildings are located, and (3) the map included in the record failed to show acreage computations.

A mere recital of the statutory language by the municipality is insufficient to meet the requirements of N.C.G.S. § 160A-36(c). *Huntley v. Potter*, 255 N.C. 619, 629, 122 S.E.2d 681, 687-88 (1961). Rather, specific findings, a showing on the face of the record as to the method used by the municipality in making its calculations, or a showing as to the present use of a particular tract, is required. *Id.*

In the present case, the Town included in its Standards of Service Report a map of the area to be annexed, as well as the Buncombe County Tax Assessor's records for the properties being annexed. Both the General Assembly and this Court have approved the use of tax records and land use maps as accepted methods designed to provide reasonably accurate results. *See* N.C. Gen. Stat. § 160A-42 (Cum. Supp. 1998) and *Tar Landing Villas*, 64 N.C. App. at 248, 307 S.E.2d at 187. "[I]n order for [a] Town to comply with the statutory requirements, there must exist some 'actual, minimum urbanization' of the proposed annexation property." *American Greetings Corp. v. Town of Alexander Mills*, 128 N.C. App. 727, 731, 497 S.E.2d 108, 110 (1998) (quoting *Thrash v. City of Asheville*, 327 N.C. 251, 257, 393 S.E.2d 842, 846 (1990)).

The Town proposes extending its boundaries to incorporate eight additional lots. The property listed on the tax records as #9733.04-80-8207.000 (Lot 1) is an improved parcel of .30 acres, classified as residential/family with buildings on the parcel valued in 1998 at $73,900. The property listed as #9733.04-80-9435.000 (Lot 2) is an improved parcel of 3.52 acres, classified as residential/family with buildings on the parcel valued in 1998 at $34,900. The property listed as #9733.04-90-4934.000 (Lot 3) is an unimproved parcel of 1.47 acres, classified as commercial vacant with no buildings or structures. The property listed as #9733.04-91-8483.000 (Lot 4) is an improved parcel of 2.25 acres, classified as commercial/parking lots. The property listed as #9733.04-90-1922.000 (Lot 5) is an unimproved parcel of 1.32 acres, classified as commercial vacant with no buildings or struc-

tures. The property listed as #9743.17-01-1671.000 (Lot 6) is an improved parcel of 8.11 acres, classified as industrial/manufacturing with buildings on the parcel valued in 1998 at $726,900. The property listed as #9733.04-81-8552.000 (Lot 7) is an improved parcel of 24.28 acres, also classified as industrial/manufacturing with buildings on the parcel valued in 1998 at $9,510,300. Finally, the property listed as #9733.04-91-6379.000 (Lot 8) is an improved parcel of 6.02 acres, classified as commercial/parking lots.

Despite the fact that the Town's statement in the Standards of Service Report and the trial court's finding relevant to this issue are incorrect, from the record before us, it is readily apparent that the Town has met the statutory requirement that "at least sixty percent . . . of the total number of lots and tracts . . . are used for residential, commercial, [or] industrial . . . purposes[.]" N.C. Gen. Stat. § 160A-36(c)(1) (Cum. Supp. 1998). Of the eight parcels, six, or seventy-five percent, are improved parcels, classified as either commercial/parking lots, industrial/manufacturing or residential/family. Petitioner has failed to produce evidence that the tax record classifications are incorrect or that the parcels are not in fact in use for these purposes; thus, petitioner has failed to carry its burden of demonstrating actual non-compliance and material prejudice or injury.

We find the record contains sufficient evidence to show that the Town has met the statutory requirements. Petitioner's fourth assignment of error is overruled.

V.

[4] By its fifth assignment of error, petitioner contends the trial court committed reversible error in finding that the Town complied with N.C. Gen. Stat. § 160A-37(e)(2) (Cum. Supp. 1998) which requires that an annexation ordinance shall contain "[a] statement of the intent of the municipality to provide services in the area being annexed as set forth in the report required by G.S. 160A-35."

The trial court concluded that the Town "adequately complied with the provisions of G.S. Sec. 160A-35" in its Standards of Service Report and "Service Plan[.]" We have addressed this issue in Part II and hold that the trial court did not err in concluding that the Town complied with the requisites of N.C.G.S. § 160A-35. Petitioner's fifth assignment of error is without merit.

SONOPRESS, INC. v. TOWN OF WEAVERVILLE

[149 N.C. App. 492 (2002)]

VI.

[5] By its sixth and final assignment of error, petitioner contends the trial court committed reversible error in finding that petitioner was not materially prejudiced due to the Town's failure to comply with N.C.G.S. § 160A-37 which reads in part:

> (b) Notice of Public Hearing.—The notice of public hearing shall:
>
> . . .
>
> (2) Describe clearly the boundaries of the area under consideration, and include a legible map of the area.
>
> . . .
>
> Such notice shall be given by publication . . . in a newspaper having general circulation in the municipality[.]

N.C. Gen. Stat. § 160A-37(b) (Cum. Supp. 1998).

The trial court concluded that "the Town complied with all of the provisions of [N.C.G.S. § 160A-37] except that the map published in the Asheville Citizen-Times with the 'Public Notice' . . . was reduced in size and was illegible." The trial court also concluded that petitioner

> was mailed a copy of the "Public Notice" of such hearing, knew that its property was the subject of annexation, had access to the report required by G.S. Sec. 160A-35 for thirty (30) days prior to the public hearing, sent a representative, a witness, and its attorney to the public hearing and in no way was materially prejudice[d] by the fact that the published map was illegible.

Petitioner does not dispute that its representatives were aware of the public hearing and in fact its president and legal counsel attended the hearing, but contends that because it did not have proper notice of the hearing it was denied "meaningful, proper notice that the Town . . . intended to annex [petitioner's property]." Petitioner further argues that its counsel made a "reasonable request," which was denied, to have the annexation matter tabled until a later date. Petitioner alleges that the Town's failure to comply with the map requirements, coupled with the Town's refusal to grant its request for delay, materially prejudiced petitioner.

We agree with the trial court that petitioner was not materially prejudiced by the Town's failure to comply with the map requirement or denial of its request to delay the hearing. The record shows that the Asheville-Citizen Times published the "Public Notice" of a public hearing on the annexation of petitioner's property on 20 and 27 April 1998. Although the map in the newspaper was deemed illegible, the notice contained a detailed description of the property and identified the owner or former owners of the property being considered for annexation. Also, the "Public Notice" stated that "[t]he report required by G.S. 160A-35 will be available at the office of the Town Clerk 30 days prior to the date of the Public Hearing." The Town Clerk further certified that the report available to the public included "a legible map of the area to be annexed[.]" Finally, although petitioner asked the Town to "table" the annexation matter, petitioner alleges in its brief that this request was made for the purpose of reviewing the Standards of Services Report and "present[ing] . . . some evidence regarding [petitioner's] needs[.]" As we have previously noted, petitioner had sufficient time to review the Standards of Service Report in the Town Clerk's office and petitioner's "needs" are not at issue in this annexation proceeding, but rather whether the Town complied with all statutory requirements.

We find that although the Town did not meet the map requirements, the trial court's findings support its conclusion that petitioner was not materially prejudiced by this error because it had ample notice of the proposed annexation and opportunity to be heard. Petitioner's sixth assignment of error is without merit.

We affirm the order of the trial court.

Affirmed.

Judges HUNTER and BRYANT concur.