FRANCES C. BRIGGS, MYRNA R. HENDRIX, ROSE INVESTMENTS, a North Carolina
General Partnership, TRAVIS M. BACH, HAYWOOD PLOTT and wife RUTH
PLOTT, HOWARD W. MEECE and wife DORIS B. MEECE, MARY ANN HICKLIN
QUARNGESSER, ALLYN FAMILY REAL ESTATE LIMITED PARTNERSHIP,
THANTEX SPECIALTIES, INC., HUBBELL REALTY DEVELOPMENT CORP.,
ALLIANCE-CAROLINA TOOL & MOLD CORPORATION, MEDICAL ACTION
INDUSTRIES, INC., CUTLER-HAMMER, INC., and EATON CORPORATION,
Petitioners v. CITY OF ASHEVILLE, a North Carolina Municipal Corporation,
Respondent

No. COA02-1296

(Filed 5 August 2003)

**1. Cities and Towns— annexation—amendments to record in superior court—classification of property**

Amendments to the record in superior court in an annexation case did not prejudice residents' rights and were properly allowed. The change concerned the classification of a parcel as urban or non-urban, but the parcel was not included in any calculations to determine the percentage of urban development.

**2. Cities and Towns— annexation—amendment of record in superior court—inclusion of enlarged map—available to public at time ordinance passed**

The amendment of an annexation record in the superior court to include an enlarged color map of proposed sewer extensions was not erroneous where the map was available for public inspection before the adoption of the ordinance.

**3. Cities and Towns— annexation—condominiums—residential rather than commercial**

Condominium units should not have been classified as commercial (thereby excluding those areas from the subdivision test) in an annexation proceeding. Condominium owners hold exclusive ownership and possession of the unit, unlike an apartment unit, and condos are typically used as an owner's residence.

**4. Cities and Towns— annexation—condominium common areas—residential**

Condominium common areas should have been classified as residential in an annexation action. Each unit owner has an undivided interest in the common areas and facilities that cannot be separated from the unit.

**5. Cities and Towns— annexation—services plan—septic system maintenance and repair**

Asheville failed to create an annexation services plan that complied with statutory requirements where it proposed provision of septic system maintenance and repair services in lieu of sewer service in a portion of an annexation area. Asheville argued that it had contracted with an independent agency for sewer services and had no control of whether that agency extended sewer services to the annexed area, but Asheville's delegation of its responsibility for providing sewer service did not relieve it of its duty to comply with statutory requirements. Moreover, although Asheville contended that it is not economically feasible to extend sewer lines into the annexed area (so that the provision of septic services is permissible), the record shows that sewer service is already being provided to a similar area. N.C.G.S. § 160A-47(3)(b); N.C.G.S. § 162A-68(h).

Appeal by petitioners from judgment entered 14 February 2002 by Judge Loto Greenlee Caviness, Superior Court, Buncombe County. Heard in the Court of Appeals 5 June 2003.

*Adams Hendon Carson Crow & Saenger, P.A., by S.J. Crow and Martin K. Reidinger for petitioners.*

*City of Asheville, by City Attorney Robert W. Oast, Jr. and William F. Slawter, PLLC, by William F. Slawter, for respondent.*

WYNN, Judge.

From the judicial review of an annexation ordinance, the residents of the proposed annexation area contend the superior court erred in holding that the City of Asheville ("Asheville") substantially complied with the provisions of N.C. Gen. Stat. § 160A-47 and -48 (2001) in its annexation of the Long Shoals Area near Asheville. We hold on appeal that the superior court: (I) properly allowed Asheville to amend the annexation record at the time of judicial review; (II) erred by classifying a condominium common area as commercial; and, (III) erred by failing to find Asheville's services plan was defective since it did not provide the statutorily required sewer service to the residents. Accordingly, we remand for further proceedings.

On 13 June 2000, Asheville adopted an annexation ordinance to extend its corporate limits after complying with the involuntary

annexation procedures authorized by N. C. Gen. Stat. § 160A-49. The annexation area included an area known as the Long Shoals area in which the petitioner-residents own property. The residents sought judicial review of the annexation ordinance in superior court. On 14 February 2002, the superior court concluded Asheville complied with all procedural and statutory requirements. The residents appeal to this Court.

Preliminarily, we note that under N.C. Gen. Stat. § 160A-50, a party challenging an annexation ordinance may seek judicial review in Superior Court and, thereafter, in the Court of Appeals and Supreme Court. "Judicial review of an annexation ordinance is limited to determining whether the annexation proceedings substantially comply with the requirements of the applicable annexation statute." *Barnhardt v. City of Kannapolis*, 116 N.C. App. 215, 217, 447 S.E.2d 471, 473 (1994). "Absolute and literal compliance with [the annexation] statute . . . is unnecessary." *In re New Bern*, 278 N.C. 641, 648, 180 S.E.2d 851, 856 (1971). "The party challenging the ordinance has the burden of showing error." *Knight v. City of Wilmington*, 73 N.C. App. 254, 256, 326 S.E.2d 376, 377 (1985). "On appeal, the findings of fact made below are binding on this Court if supported by the evidence, even where there may be evidence to the contrary." *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980). However, "conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Barnhardt*, 116 N.C. App. at 217, 447 S.E.2d at 473.

## I. Amendment to Record on Judicial Review

[1] On appeal, the residents first contend the superior court improperly allowed amendments to the annexation area record at the time of judicial review. Because we find that the amendments did not materially prejudice the residents' rights, we uphold the court's decision to allow the amendments.

Under N. C. Gen. Stat. § 160A-48(c)(3) and (d), the procedures that a municipality must undertake to involuntarily annex an area provide that:

> (c) Part or all of the area to be annexed must be developed for urban purposes at the time of approval of the report provided for in G.S. 160A-47. . . . An area developed for urban purposes is defined as any area which meets any one of the following standards:

> . . .

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size. . . .

(d) In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any area which does not meet the requirements of subsection (c) if such area either:

(1) Lies between the municipal boundary and an area developed for urban purposes so that the area developed for urban purposes is either not adjacent to the municipal boundary or cannot be served by the municipality without extending services and/or water and/or sewer lines through such sparsely developed area; or

(2) Is adjacent, on at least sixty percent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c).

Thus, in this case, to involuntarily annex the Long Shoals area, N. C. Gen. Stat. § 160A-48(c)(3) and (d) required Asheville to configure the annexation area to determine if the area to be annexed met the statutory percentages. In so doing, Asheville configured the annexation area by dividing the area into a portion to be qualified under G.S. 160A-48(c) as an urban area, and a portion to be qualified under G.S. 160A-48(d) as a non-urban area. However, while Asheville classified Parcel Number 94-4658, a vacant, wooded and unused 7.3 acre tract, as urban on its land use map; it classified this parcel as non-urban on the property inventory. Nonetheless, in presenting the ordinance for adoption, Asheville excluded this parcel's acreage from all calculations; thus, the ordinance was adopted without correction of this inconsistency.

In its judgment, the superior court found:

20. Property located in the southwest quadrant of the intersection of Old Shoals Road and Heywood Road, PIN 9644.16-94-4658, abutting the east side of Non-Urban Area C.d.4, and consisting of

7.3 acres, is identified in the narrative parts of the Plan and the Annexation Ordinance as being part of Non-Urban Area C.d.4. However, the property is shown on the contiguity and land use maps in the Plan and Annexation Ordinance as being in use, and the calculations for the Non-Urban Areas in the Long Shoals Area were based on the maps.

21. . . . The failure to include this property as part of Non-Urban Area C.d.4 was unintentional.

22. If included as part of Non-Urban Area C.d.4, to which it is directly adjacent, the contiguity of Non-Urban Area C.d.4 with urbanized areas in the Long Shoals Area would not be negatively affected, and the total acreage of the Non-Urban Areas for the Long Shoals Area would compute to 19.78%.

On appeal, the residents contend the superior court should have reviewed the annexation ordinance utilizing the record as it existed when the ordinance was adopted. As such, they contend that the superior court should have included the 7.3 acres of Parcel 4658 in the urban area total making the urban area percentage 57.15% and thus, less than the 60% minimum required by G.S. 160A-48(c)(3). We disagree.

"When the record submitted in superior court by the municipal corporation demonstrates, on its face, substantial compliance with the applicable annexation statutes, then the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which *materially* prejudiced their substantive rights." (emphasis supplied) *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987), *aff'd by* 321 N.C. 589, 364 S.E.2d 139 (1988).

In this case, because Asheville substantially complied with the requirements of 160A-48(c)(3), the burden fell on petitioners to show by competent and substantial evidence that the exclusion of parcel 4658 materially prejudiced their substantive rights. However, although parcel 4658 was classified as both urban and non-urban, it was not included in any calculations. Moreover, the parties concede the lot was vacant, wooded and unused and should have been classified as non-urban. As the trial court found, if lot 4658's 7.3 acres was included in the non-urban calculations, the percentage of non-urban acreage would total 19.78%, which would be acceptable under G.S.

160A-48(d). Accordingly, we hold that the residents were not materially prejudiced by this amendment to the record.

[2] The residents also contend the trial court erroneously allowed Asheville to amend the record to include enlarged color maps of the proposed sewer extensions. They argue that Asheville initially filed with the trial court two sets of illegible maps that were noncompliant with N.C. Gen. Stat. § 160A-47. However, the record indicates Asheville moved to supplement the record with an enlarged color map of the sewer extension that was part of the services plan and available for public inspection before the adoption of the annexation ordinance. Specifically, the letter sent by Asheville to the residents in March 2000 states "Enclosed with this notification is a legible map outlining the area proposed for annexation and a written description of the boundary. Additionally, the services plan, which has been approved by the City Council, is on display for public inspection, with an enlarged map of the subject area." Accordingly, since the map was in existence at the time the ordinance was adopted, the trial court did not err by allowing this amendment to the record.

## II. Classification of Condominiums

[3] The residents next contend the trial court erroneously classified the Heywood Crossing Condominiums' common areas as commercial thereby excluding the acreage from the subdivision test. We agree.

In classifying lots and tracts as either residential, commercial, industrial, institutional, or governmental, municipalities must look at the actual use of the land at the time of annexation. *See Thrash v. City of Asheville*, 327 N.C. 251, 393 S.E.2d 842 (1990); *Arquilla v. City of Salisbury*, 136 N.C. App. 24, 523 S.E.2d 155 (1999).

Under *Lowe v. Town of Mebane*, this Court upheld the commercial classification of a forty-unit apartment complex on 9.33 acres because "to allow petitioners to prevail would be an unreasonably restrictive interpretation of the law which would fly in the face of the policy behind annexation, which is to allow cities to annex contiguous urbanized areas to facilitate city planning." 76 N.C. App. 239, 243, 332 S.E.2d 739, 742 (1985). Asheville, relying upon *Lowe*, contends that because "there [is] no essential difference for land use or zoning purposes between an apartment complex, where all units are under single ownership, and condominiums, where the units are separately owned, the condominiums could be classified as either commercial or residential in use. We disagree.

Under N.C. Gen. Stat. § 47A-5, condominium unit ownership "vest[s] in the holder exclusive ownership and possession with all the incidents of real property." Thus,

> A condominium unit in the building may be individually conveyed, leased and encumbered and may be inherited or devised by will, as if it were solely and entirely independent of the other condominium units in the building of which it forms a part. Such unit may be held and owned by more than one person either as tenants in common or tenants by the entirety or in any other manner recognized under the laws of this State.

It follows that unlike an apartment unit renter, condominium unit owners hold exclusive ownership and possession of the unit. Moreover, apartment units are generally maintained for commercial rental use whereas condominiums typically are used as an owner's residence. This distinction leads to the conclusion that condominium units, unlike apartment units, are more appropriately classified as residential, rather than commercial. *See Tar Landing Villas Owners' Assoc. v. Town of Atlantic Beach*, 64 N.C. App. 239, 307 S.E.2d 181 (1983) (where this Court upheld an annexation ordinance by a city of less than 5,000 that classified condominiums as residential). Accordingly, we hold that the superior court erroneously classified the 77 condominium units of Heywood Crossing Condominiums as commercial.

[4] Notwithstanding our holding that the 77 condominium units should be classified as residential, Asheville contends further that the area common to the condominium units consisting of 6.38 acres, was properly classified as commercial. This common area consisted of a parking lot, recreational amenities, and landscaped areas between and around the condominium units.

In *Adams-Millis Corp. v. Town of Kernersville*, 6 N.C. App. 78, 169 S.E.2d 496 (1969), this Court upheld the residential classification of several pond lots jointly owned by owners of four adjacent lots. The owners considered the pond lots as an accessory use to their dwellings, such as a fish or lily pond. Similarly, in this case, each condominium unit owner owns an undivided interest in the common areas and facilities, which consists of parking lots, recreational amenities, and landscaping. *See* N.C. Gen. Stat. 47A-6(a). Furthermore, the undivided interest in the common areas can not be "separated from the unit to which it appertains and [is] deemed conveyed or encumbered with the unit even though such interest is not

expressly mentioned or described in the conveyance or other instrument." N.C. Gen. Stat. § 47A-6(c). Accordingly, following the reasoning of *Adams-Millis*, we hold that the superior court erred by failing to classify the common areas of the condominium as residential.

### III. Annexation Service Plan—Sewer Services

[5] Finally, the residents contend the trial court erroneously upheld Asheville's proposal to provide septic system maintenance and repair services in lieu of sewer service to a portion of the annexation area. We agree.

N.C. Gen. Stat. § 160A-47(3)(b) states that an annexing municipality "shall make plans for the extension of services to the area to be annexed and shall, prior to the public hearing . . ., prepare a report setting forth such plan . . . ." The statute specifically requires the plan to "[p]rovide for extension of major trunk water mains and sewer outfall lines into the area to be annexed . . . so that property owners . . . will be able to secure public water and sewer service, *according to policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.*" (Emphasis supplied). However, § 160A-47(3)(b) provides an exception to this requirement,

> In areas where the municipality is required to extend sewer service according to its policies, but *the installation of sewer is not economically feasible due to the unique topography of the area,* the municipality shall provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated.

(Emphasis supplied).

In this case, Asheville determined under § 160A-47(3)(b) that it was economically infeasible to provide sewer service to residents living in the Old Shoals area of Annexation Area C. Thus, instead of providing sewer service, Asheville chose to provide septic system maintenance and repair services for those affected parcels "until such time as sewer service to them is constructed and connected." (Annexation Services Plan, C-21, R. p. 223). Asheville contended that since it had contracted with the Metropolitan Sewerage District to provide sewer services, its responsibilities under § 160A-47(3)(b) had been delegated to that independent agency. However, in rejecting a similar argument in *Wallace v. Town of Chapel Hill*, this Court stated:

Section 160A-47 requires the [municipality] to provide in the annexed area 'each major municipal service performed within the municipality at the time of annexation.' The municipality may delegate responsibility for the providing of these services to others, such as [a metropolitan sewerage district]. However the municipality is not 'relieved of its primary duty' to comply with the statute. If such services are not provided, the residents of the annexed area are entitled to a Writ of Mandamus requiring the municipality to live up to its commitments.

*Wallace*, 93 N.C. App. 422, 429, 378 S.E.2d 225, 229 (1989); *see also Cockrell v. City of Raleigh*, 306 N.C. 479, 486, 293 S.E.2d 770, 775 (1982). We are therefore compelled to hold that while Asheville may delegate its responsibility for providing sewer service to the Metropolitan Sewerage District, it (like the Town of Chapel Hill) is not relieved of its primary duty to comply with § 160A-47(3)(b).

Similarly, we reject Asheville's argument that they have no control over whether the Metropolitan Sewerage District extends sewer services to the annexation area. Under N.C. Gen. Stat. § 162A-68(h) (2001), "the annexation by a city or town within a metropolitan sewerage district of an area lying outside such district shall not be construed as the inclusion within the district of an additional political subdivision or unincorporated area within the meaning of the provisions of this section; but any such areas so annexed *shall* become a part of the district and shall be subject to all debts thereof." Accordingly, the statute requires that the annexation area will become part of the metropolitan sewerage district.

Asheville also contends that because it is economically infeasible to extend the major sewer outfall lines into the annexed area, the statute enables it to provide septic system services in lieu of sewer service. We disagree.

N.C. Gen. Stat. § 160A-47(3)(b) provides that "in areas where the municipality is required to extend sewer services according to its policies, but the installation of sewer is not is *not economically feasible due to the unique topography* of the area, the municipality shall provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated." (Emphasis supplied). Moreover, under § 160A-47(3)(b), the connection of individual lots to the main sewer outfall line is governed by the city's policies. In short, subsection (3)(b) allows the city to pro-

**BRIGGS v. CITY OF ASHEVILLE**

[159 N.C. App. 558 (2003)]

vide septic system maintenance (1) when the unique topography of the land makes it economically infeasible to connect an individual lot to the main sewer outfall line, and (2) "until such time as sewer service is provided to properties similarly situated."

In this case, John Echeverri, the assistant city engineer, testified that Asheville could service the area to be annexed with a pump station. He indicated that sewer service is provided to the northern side of Lake Julian, an area similar in topography to the southeastern side of Lake Julian where the property to be annexed is located. Thus, even assuming it was economically infeasible to extend the sewer lines to the individual homes, Mr. Echeverri's testimony establishes that sewer service is already being provided to a "similarly situated" area.

Moreover, the record shows that with the exception of a few isolated properties on the northern side of the lake, residents on the northern, eastern, and western sides of Lake Julian had sewer service. On the southern side, all of the annexation area residents had sewer service with the exception of approximately 35 to 40 residences in the Old Shoals area. Since the record shows that sewer service is already being provided to an area similarly situated to the area to be annexed, we hold that Asheville failed to create an annexation services plan that complies with N.C. Gen. Stat. § 160A-47(3)(b). *See Wallace v. Town of Chapel Hill*, 93 N.C. App. 422, 428, 378 S.E.2d 225, 228 (1989) ("The purpose of [G.S. 160A-47] is to insure that major municipal services are provided to newly annexed areas on a nondiscriminatory basis.").

Reversed and remanded.

Judges McCULLOUGH and ELMORE concur.