STEPHEN AND MICHELLE ARNOLD, ROBERT P. AND ELIZABETH M. BARR, DAVID E. AND KRYSTAL D. BOTTOM, TIMOTHY A. AND JEANETTE P. BRADLEY, CHARLES MICHAEL AND DEBRA S. BRAUN, KENT AND BARBARA CAMPBELL, ROBERT E. AND AIDA V. DUNGAN, RICHARD R. AND CHARLOTTE D. ELEY, JONATHAN A. AND PEGGY J. HILL, STEVEN P. AND CHRISTI W. HURD, JOHN P. AND KIMBERLY J. KENNEDY, PIERCE A. KAHADUWE LIVING TRUST, MARK P. AND JACQUELINE G. RUSCOE, BENJAMIN F. AND SUSAN E. TURNER, JACQUELYN M. WEBB, TRUSTEE OF THE JACQUELYN M. WEBB LIVING TRUST, MARC B. AND JACKIE LEE WESTLE, DERWIN J. AND NANCY L.C. WILLIAMS, ROBERT L. AND BECKY L. WILSON, STEPHEN M. AND JULIA R. EARGLE, AND ROBERT A. AND JANE P. ERRICO, PETITIONERS v. CITY OF ASHEVILLE, RESPONDENT

No. COA06-1167

(Filed 6 November 2007)

**1. Cities and Towns— annexation—classification of tracts— subdivision test**

A city substantially and strictly complied with the requirements of the annexation statute where petitioners disputed the classification of certain tracts, but the evidence and petitioners'

own contention supported the classification as non-urban (despite the erroneous classification of one portion as residential); the city correctly excluded non-urban land from its calculations for purposes of N.C.G.S. § 160A-48(c) because it would confound the purpose of the statute to subject land which qualifies under subsection (d) to subsection (c) requirements; the evidence supported the court's finding that the city's mathematical calculations were supported by the evidence; and the city complied with the subdivision test.

**2. Cities and Towns— change of ordinance—no notice or hearing required**

There was no substantial change to an annexation ordinance necessitating notice or a second hearing where the only change to the ordinance was the deletion of one lot and there was no change in the subsections under which the city sought annexation.

**3. Cities and Towns— annexation—extension of police services**

A city substantially complied with N.C.G.S. § 160A-47(3)(a) in a disputed annexation in promising to extend services. Although petitioners' contention was based on the officer to resident ratio in North Carolina, the city is required only to provide services on substantially the same basis as elsewhere within the city.

Appeal by petitioners-appellants from judgment entered 31 January 2006 by Judge James W. Morgan in Superior Court, Buncombe County. Heard in the Court of Appeals 28 March 2007.

*Dungan & Associates, P.A. by Jeffrey K. Stahl for Petitioners-Appellants.*

*Robert W. Oast, Jr. for Respondent-Appellee.*

STROUD, Judge.

This is an appeal challenging the adoption of an annexation ordinance. Petitioners, landowners in the area to be annexed, instituted this action against respondent, the City of Asheville, to review respondent's adoption of an ordinance that would annex several acres of petitioners' property into the City of Asheville. The questions before this Court are: 1) whether the trial court erred in determining that the City of Asheville substantially complied with N.C. Gen. Stat.

§ 160A-48; 2) whether the trial court erred in determining that the City of Asheville was not required to hold a second public hearing under N.C. Gen. Stat. § 160A-49(e); and 3) whether the trial court erred in determining that the provisions of the City of Asheville's Services Plan in regard to police protection were sufficient under N.C. Gen. Stat. § 160A-147. In this appeal, we must consider whether the City of Asheville substantially complied with the applicable statutes for annexing land in North Carolina. *Briggs v. City of Asheville*, 159 N.C. App. 558, 560, 583 S.E.2d 733, 735, *disc. rev. denied*, 357 N.C. 657, 589 S.E.2d 886, *disc. rev. denied*, 357 N.C. 657, 589 S.E.2d 887 (2003). For the following reasons, we hold that the City of Asheville substantially complied with the applicable statutes for annexation. Accordingly, we affirm the superior court's order upholding the City of Asheville's annexation ordinance.

## I. Background

On 9 April 2002, the City of Asheville ("City") adopted a resolution of intent to consider annexing several acres generally referred to as the Huntington Chase Area ("Area"). On 23 April 2002 the City adopted an Annexation Services Plan ("Services Plan") which included detailed findings on: "Statutory Standards Statements;" "Plan for Extension of Services," including police protection, fire protection, solid waste collection, street maintenance, water distribution, sewer collection, and administrative and other services; "Financing Plan for Annexation Areas;" and "Statement of Impact for Annexation Areas." The Services Plan also had several maps of the Area, including a map specifically addressing each of the following: "present and proposed boundaries," "generalized land use," "existing and proposed water lines," and "present and proposed sanitary sewer lines."

On 3 June 2002 the City held a public informational meeting regarding annexation of the Area. On 11 June 2002 the City held a public hearing concerning the question of annexation of the Area. On 25 June 2002 one lot having the tax parcel identification number (PIN) 9659.11-76-1879 (herein "Lot 1879") was removed from the Area and the City amended the Services Plan to reflect the removal. On 27 June 2002 the City adopted Ordinance No. 2931, "An Ordinance to Extend the Corporate Limits of the City of Asheville, North Carolina, Under the Authority Granted by Part 3, Article 4A, Chapter 160A of the General Statues [sic] of North Carolina, by Annexing a Contiguous Area Known as the Huntington Chase Area" ("ordinance"). The ordinance was adopted as amended and did not include Lot 1879.

On 23 August 2002 several landowners in the Area (hereinafter "petitioners") filed a verified petition for review and appeal of the City's ordinance. On 31 January 2006, following a non-jury trial in Superior Court, Buncombe County, Judge James W. Morgan affirmed the City's ordinance. Petitioners appeal.

## II. Standard of Review

When a petitioner seeks review of an annexation ordinance, the trial court may receive evidence (1) That the statutory procedure was not followed, or (2) That the provisions of G.S. 160A-47 were not met, or (3) That the provisions of G.S. 160A-48 have not been met. Regarding the questions presented on appeal, we note initially that the trial court concluded that the Report and the record of annexation proceedings demonstrated, *prima facie*, substantial compliance with applicable statutes. Thus, the burden was upon petitioners to show by competent evidence that the [. . .] municipality in fact failed to meet the statutory requirements or that there was irregularity in the proceedings which materially prejudiced their substantive rights.

*Chapel Hill Country Club v. Town of Chapel Hill*, 97 N.C. App. 171, 175-76, 388 S.E.2d 168, 171, *disc. rev. denied*, 326 N.C. 481, 392 S.E.2d 87 (1990) (internal citation and internal quotations omitted).

Judicial review of an annexation ordinance is limited to determining whether the annexation proceedings substantially comply with the requirements of the applicable annexation statute. Absolute and literal compliance with the annexation statute [. . .] is unnecessary. The party challenging the ordinance has the burden of showing error. On appeal, the findings of fact made below are binding on this Court if supported by the evidence, *even where there may be evidence to the contrary*. However, conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.

*Briggs* at 560, 583 S.E.2d at 735 (internal citations and internal quotations omitted) (emphasis added).

## III. N.C. Gen. Stat. § 160A-48

[1] Petitioners contend that the City has not complied with N.C. Gen. Stat. § 160A-48(c)(2)-(3). N.C. Gen. Stat. § 160A-48(c)(2)-(3) and (d) provides that:

(c) Part or all of the area to be annexed must be developed for urban purposes at the time of approval of the report provided for

in G.S. 160A-47. Area of streets and street rights-of-way shall not be used to determine total acreage under this section. An area developed for urban purposes is defined as any area which meets any one of the following standards:

. . . .

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts three acres or less in size and such that at least sixty-five percent (65%) of the total number of lots and tracts are one acre or less in size; or

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size. For purposes of this section, a lot or tract shall not be considered in use for a commercial, industrial, institutional, or governmental purpose if the lot or tract is used only temporarily, occasionally, or on an incidental or insubstantial basis in relation to the size and character of the lot or tract. For purposes of this section, acreage in use for commercial, industrial, institutional, or governmental purposes shall include acreage actually occupied by buildings or other man-made structures together with all areas that are reasonably necessary and appurtenant to such facilities for purposes of parking, storage, ingress and egress, utilities, buffering, and other ancillary services and facilities.

. . . .

(d) In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any area which does not meet the requirements of subsection (c).

N.C. Gen. Stat. § 160A-48(c)(2)-(3) and (d) (2001).

Petitioners contend that the trial court erred in affirming the City's ordinance because "the subdivision, classification, and calculations by the City are unfair, inaccurate, and violate the statutory

ARNOLD v. CITY OF ASHEVILLE

[186 N.C. App. 542 (2007)]

intent and requirements." At trial, the City admitted that it wrongly designated 2.23 acres of a 5.73 acre lot having the PIN 9659.12-88-7529 ("Lot 7529") as "in use for residential purposes". After the classification the City then excluded the 5.73 acres from calculations in N.C. Gen. Stat. § 160A-48(c). *See* N.C. Gen. Stat. § 160A-48(c). Petitioners argue that both the classification of Lot 7529's use and the calculations are incorrect. We disagree.

First, we must address the classification of the 2.23 acres within Lot 7529. The City concedes that the land was originally improperly classified as "residential." "In classifying lots and tracts as either residential, commercial, industrial, institutional, or governmental, municipalities must look at the *actual use* of the land at the time of annexation." *Briggs*, 159 N.C. App. at 563, 583 S.E.2d at 737 (emphasis added).

> For purposes of [N.C. Gen. Stat. § 160A-48(c)(3)], acreage in use for commercial, industrial, institutional, or governmental purposes shall include acreage actually occupied by buildings or other man-made structures together with all areas that are reasonably necessary and appurtenant to such facilities for purposes of parking, storage, ingress and egress, utilities, buffering, and other ancillary services and facilities . . .

N.C. Gen. Stat. § 160A-48(c)(3). N.C. Gen. Stat. § 160A-53(2) states that " '[u]sed for residential purposes' shall mean any lot or tract five acres or less in size on which is constructed a habitable dwelling unit." N.C. Gen. Stat. § 160A-53(2) (2001).

The City concedes that the 2.23 acres within Lot 7529 were improperly classified as "residential" because the entire lot exceeded five acres in size. *See id.* Furthermore, there is no evidence nor do petitioners argue that the land qualifies as "commercial, industrial, institutional or governmental" use. *See* N.C. Gen. Stat. § 160A-47(c)(3). In "Petitioners' Answers to Respondent's First Set of Interrogatories" "Petitioners state that all of lot . . . 7529 should be characterized as nonurban." Thus pursuant to petitioner's own contention, the City should have properly classified the 2.23 acres as land "[i]n addition to areas developed for urban purposes" under subsection (d) (hereinafter "non-urban") as it does not meet any of the qualifications to be classified as urban under N.C. Gen. Stat. § 160A-48(c). *See* N.C. Gen. Stat. § 160A-48(c)-(d). Therefore, though we find the City should not have classified the land as "residential" we also find petitioners have failed to show a lack of substantial compliance with

the requirements of the applicable annexation statute as petitioners themselves would classify the land as "non-urban," making the subsection (c) calculations inapplicable, pursuant to the reasoning below. *See id; Briggs* at 560, 583 S.E.2d at 735.

Next we must address the proper classification of the 3.5 acres within Lot 7529. As previously noted, "actual use" determines how land should be classified. *Briggs,* 159 N.C. App. at 563, 583 S.E.2d at 737. Trial testimony indicated that the 3.5 acres was "undeveloped" and that there may have been an "old chicken house" on the tract. Again, petitioner's own answers to interrogatories characterize "all of lot . . . 7529 . . . as nonurban." We therefore find the trial court's finding of fact that the 3.5 acres should be classified as "non-urban," to be supported by the evidence.[1]

We next consider what land should be included within the N.C. Gen. Stat. § 160A-48(c)(2)-(3) calculations. Petitioners argue land being annexed under subsection (d), though it does not meet the requirements of subsection (c), should be included when calculating "total acreage" for the purposes of subsection (c). *See* N.C. Gen. Stat. § 160A-48(c) and (d). They contend that "total acreage" means both land "developed for urban purposes" under subsection (c) and "nonurban" land under subsection (d). We disagree.

> The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. The foremost task in statutory interpretation is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language. If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to defeat or impair the object of the statute [ . . .] if that can reasonably be done without doing violence to the legislative language.

---

1. Petitioner also argued that the City "arbitrarily divided Lot 7529 into two separate areas in effort [sic] to meet compliance with N.C. Gen. Stat. § 160A-48." However, because the City has conceded that it incorrectly classified the front portion of the lot as "residential" and has remedied the classification error in its calculations, we need not address this argument. Assuming *arguendo* that petitioner's classification of the entirety of Lot 7529 as "non-urban" is correct, the City has still conformed with the applicable annexation statute per the reasoning below. *See* N.C. Gen. Stat. § 160A-48(c) and (d).

*Carolina Power & Light Co. v. City of Asheville,* 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (internal citations and internal quotations omitted).

The language of the statute makes the legislative intent in subsection (d) clear: "The purpose of this subsection is to permit municipal governing boards to extend corporate limits to include all nearby areas developed for urban purposes and where necessary to include areas *which at the time of annexation are not yet developed for urban purposes.*" N.C. Gen. Stat. § 160A-48(d) (emphasis added). The clear purpose of subsection (d) is to allow cities to annex land which does not qualify as "urban" under subsection (c) if it will qualify under subsection (d). *See id.* It would confound the very purpose of the statute to subject land which qualifies under subsection (d) to subsection (c) requirements, when the stated purpose of subsection (d) is to include land which does not meet the requirements of subsection (c). *See* N.C. Gen. Stat. § 160A-48(c)-(d).

Furthermore, subsection (d) by its own terms applies to areas "*[i]n addition to* areas developed for urban purposes." N.C. Gen. Stat. § 160A-48(d) (emphasis added). Such language demonstrates that land qualifying under subsection (d) is not meant to be subjected to the rigors of subsection (c), but rather may be included in the annexation "[i]n addition to" such land. *See id.* We find that "total acreage" under subsection (c) refers only to those acres that fall within subsection (c), those acres "developed for urban purposes." *See* N.C. Gen. Stat. § 160A-48(c). The City was correct under the language of the statute in excluding "non-urban" land from its calculations for purposes of subsection (c). *See* N.C. Gen. Stat. § 160A-48(c)-(d).

Lastly, this Court must actually apply N.C. Gen. Stat. § 160A-48(c) to determine if the City is in substantial compliance. *See* N.C. Gen. Stat. § 160A-48(c); *Briggs* at 560, 583 S.E.2d at 735. Petitioners assign error to the trial court's calculations pursuant to N.C. Gen. Stat. § 160A-48(c)(2) and (3). *See* N.C. Gen. Stat. § 160A-48(c)(2)-(3).

[S]ubsection (c)(3) . . . is known as the "Urban Use/Subdivision Test." This test, in essence, provides that an area is developed for urban purposes if at least sixty percent of the total number of lots in the area are used for residential, commercial, industrial, institutional, or governmental purposes and is subdivided into lots such that at least sixty percent of the total acreage of the area, not counting that used for commercial, industrial, govern-

mental, or institutional purposes, consists of lots three acres or less in size.

*Carolina Power & Light Co.* at 513, 597 S.E.2d at 719.

We are bound by the trial court's findings of fact "if supported by the evidence." *See Briggs*, 159 N.C. App. at 560, 583 S.E.2d at 735. Petitioner assigns error to the trial court's decision to incorporate the City's mathematical calculations into its findings of fact because according to petitioners, they are incorrect. However, petitioner has failed to present any alternative calculations as to N.C. Gen. Stat. § 160A-48(c)(3) which would be supported by the evidence, beyond conclusory trial testimony and one exhibit with acreage and classification calculations, but no explanation of how petitioner made its calculations under N.C. Gen. Stat. § 160A-48. We overrule petitioner's assignment of error because the trial testimony and exhibits presented by the City's witnesses contain detailed information regarding the land to be annexed and its use, as well as its mathematical formulas and land classifications, upon which the trial court could properly base its finding that the mathematical calculations were supported by the evidence. *See Briggs*, 159 N.C. App. at 560, 583 S.E.2d at 735.

Since the trial court's findings of fact as to the mathematical calculations of N.C. Gen. Stat. § 160A-48(c)(3) are supported by the evidence, we now apply the use/subdivision test. *See id.*, *Carolina Power & Light Co.* at 513, 597 S.E.2d at 719. Assuming *arguendo*, as urged by petitioners, that the entire Lot 7529 should be classified as "non-urban", the trial court determined that 84.2% of the land was used for urban purposes. The statute requires that "60% of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes" and thus the City has complied with the use test by having 84.2% so used. *See* N.C. Gen. Stat. § 160A-48(c)(3). The trial court also determined that 67.59% of the land "not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consist[ed] of lots and tracts three acres or less in size." *See id.* The statute only requires 60% "not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, [to] consist[] of lots and tracts three acres or less in size." *See id.* Thus the City has also complied with the subdivision test. The trial court's mathematical calculations support its conclusions of law because the numbers show *prima facie* compliance with the statutory language of N.C. Gen. Stat. § 160A-48(c)(3). *See id.*

ARNOLD v. CITY OF ASHEVILLE

[186 N.C. App. 542 (2007)]

Subsection (c) uses the conjunction "or" between each subsection, and thus it is clear that the requirements of only one subsection, not all, must be met to satisfy the requirements of subsection (c). *See id.* Thus by meeting the requirements of subsection (c)(3) the City has met the requirements of subsection (c) and this Court has no need to address subsection (c)(2). *See id.* The City has met the requirements of subsection (c)(3) and thus has substantially and strictly complied with the requirements of the annexation statute.[2] *See Briggs,* 159 N.C. App. at 560, 583 S.E.2d at 735.

IV. Second Public Hearing

[2] Petitioners next argue that upon amending the ordinance to exclude Lot 1879 the City was required to hold a second public hearing. N.C. Gen. Stat. § 160A-49(e) states that an additional public hearing is required for an amended annexation report "if the annexation report is amended to show additional subsections of G.S. 160A-48(c) or (d) under which the annexation qualifies that were not listed in the original report." N.C. Gen. Stat. § 160A-49(e) (2001).

In *Chapel Hill Country Club,* after the initial public hearing the town of Chapel Hill amended a plat by dividing one lot into thirty, deleting approximately twenty-eight acres, and separately qualifying a strip of land. *Chapel Hill Country Club* at 187, 388 S.E.2d at 177-78. This Court found that

[t]hese changes did not bring any new land within the scope of the annexation ordinance. Nor did the changes involve additional subsections of G.S. 160A-48(c) or (d), under which the annexation qualifies, that were not listed in the original report . . . .

[T]he relevant inquiry is whether the amendment effected a substantial change to the ordinance, necessitating notice to those affected thereby. We hold that, in the case below, the Town's

---

2. Petitioners also argue that the trial court erred in affirming the City's ordinance because the City did not comply with N.C. Gen. Stat. § 160A-47(2). Petitioners contend the City failed to provide "[a] statement showing that the area to be annexed meets the requirements of G.S. 160A-48" regarding the subsection (c) calculations. N.C. Gen. Stat. 160A-47(2) (2001). Were this contention true, that the City did not comply with N.C. Gen. Stat. § 160A-48, the City's "statement showing that the area to be annexed meets the requirements of G.S. 160A-48" would also logically fail. *See* N.C. Gen. Stat. § 160A-47(2). However, for the reasons set forth above, we conclude that the City did substantially comply with N.C. Gen. Stat. § 160A-48, that the City's statement as to such compliance with N.C. Gen. Stat. § 160A-48 was adequate. *See* Briggs at 560, 583 S.E.2d at 735.

amendment made no substantial change in the annexation ordinance and that petitioners were not prejudiced by the absence of a second public hearing.

*Id.*, 97 N.C. App. at 187-88, 388 S.E.2d at 178 (internal citations and internal quotations omitted). In *Chapel Hill Country Club*, changes involving much larger areas of land were made to the ordinance, but the court still did not find a "substantial change" in the ordinance which would require notice because no land was added and there were no changes which implicated additional subsections of N.C. Gen. Stat. § 160A-48(c) or (d). *See Chapel Hill Country Club* at 187, 388 S.E.2d at 177-78. Here, with the only change to the ordinance being the deletion of one lot and no change in the subsections of N.C. Gen. Stat. § 160A-48 under which the City sought annexation, we conclude there was no "substantial change to the ordinance, necessitating notice." *See id.* at 187-88, 388 S.E.2d at 178.

Petitioners also argue that a second public hearing is required because the original ordinance did not comply with statutory requirements, but the amended ordinance does. However, *Sonopress, Inc.*, states, "There is no requirement that a second public hearing be held on an amended annexation proposal, when that amendment is adopted to achieve compliance with G.S. 160A-35."[3] *Sonopress, Inc. v. Town of Weaverville*, 149 N.C. App. 492, 503, 562 S.E.2d 32, 38, *disc. rev. denied*, 355 N.C. 751, 565 S.E.2d 671 (2002) (citation and quotations omitted).

In the present case no additions were made to the Area to be annexed but one lot was removed. There is no requirement that a second public hearing be granted for amendments to an annexation report of this nature. *See* N.C. Gen. Stat. § 160A-49(e); *Chapel Hill Country Club, Inc.*, at 187-88, 388 S.E.2d at 178. We also concluded *supra* that no "substantial change to the ordinance, necessitating notice to those affected thereby" was made. *See id.* at 188, 388 S.E.2d at 178. Therefore, we find that the trial court did not err in concluding that the City was not required to hold a second public hearing.

### V. Extension of Police Services to the Area

[3] Lastly, petitioners argue the trial court erred in affirming the ordinance because the City's Services Report does not make adequate

---

3. N.C. Gen. Stat. § 160A-35 is the corollary to N.C. Gen. Stat. § 160A-47. *See* N.C. Gen. Stat. § 160A-35 (2001); N.C. Gen. Stat. § 160A-47. The only significant difference in these statutes is that N.C. Gen. Stat. § 160A-35 applies to cities less than 5,000 and N.C. Gen. Stat. § 160A-47 applies to cities of 5,000 or more. *See id.*

provision for the extension of police services to the annexed Area. N.C. Gen. Stat. § 160A-47 states,

> A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

> . . . .

> (3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

> > a. Provide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

N.C. Gen. Stat. § 160A-47(3)(a).

In *Nolan v. Town of Weddington*, this Court stated that

> A town is required to extend its municipal services on a non-discriminatory basis, meaning it must provide an annexed area with *substantially the same services it provides to existing town residents.*

> . . . .

> The sufficiency of services provided to an annexed area, therefore, is measured against what services are provided to existing town residents. A town must provide the annexed area with each major municipal service performed within the municipality, and it must provide those services on *substantially the same basis that they are provided elsewhere within the town.* If a town extends the services it currently provides, and if it extends them in a nondiscriminatory manner, it satisfies the statutory requirements.

*Nolan v. Town of Weddington*, 182 N.C. App. 486, 490, 642 S.E.2d 261, 264 (2007) (internal citations and internal quotations omitted) (emphasis added).

The City is required to provide in its Services Plan

(1) information with respect to the current level of services within the Town, (2) a commitment to provide substantially the same level of services in the annexation area, and (3) information as to how the extension of services will be financed; this information is sufficient to allow the public and the courts to determine that the Town has committed itself to provide a nondiscriminatory level of services to the annexed area and to establish compliance with G.S. [160A-47].

*Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 23, 356 S.E.2d 599, 605 (1987), *aff'd, per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988).

Petitioners' argument as to police services is primarily based on the contention that "[i]n North Carolina a ratio of one officer per 300 or 400 residents is typical for cities and towns. The current ratio in Asheville is one officer per 410 residents." The record also reveals a concern that the officer-to-resident ratio was up at the time of the hearing due to some vacancies in the police department. However, petitioners cite no law requiring a city to maintain a ratio of 300-400 residents per officer but only cite evidence that this ratio is an average throughout North Carolina. The City is required only to provide "services on substantially the same basis that they are provided *elsewhere within the town*," not a particular level of service based upon a statewide average. *Nolan* at 490, 642 S.E.2d at 264. The City's Services Report states that "[t]he police/citizen ratio following annexation is estimated at one officer to 417 residents." The Services Report also stated that "[b]ecause of the relatively small size of the annexation areas and close proximity to the existing municipal boundaries, no additional capital or operating expense is anticipated in adding these areas to the existing patrol districts."

We find this evidence to be sufficient to conclude that the City addressed the extension of police services and will be providing such services to the Area "on substantially the same basis that they are provided elsewhere within the town," *see Nolan* at 490, 642 S.E.2d at 264, because of the "small size" and "close proximity" of the area being annexed. In addition, there was no evidence to indicate that any vacancies in the police department's staff were anything beyond a temporary condition. Certainly the actual number of officers employed by a law enforcement agency may vary on a daily basis, considering officers who retire, become disabled, or leave their

employment for other reasons. The relevant consideration is the City's commitment to provide a particular level of service. The City identified the level of police services "now available to city residents and committed to provide the same services to the annexed area. The statute and case law require no more." *Parkwood Ass'n, Inc. v. City of Durham*, 124 N.C. App. 603, 607, 478 S.E.2d 204, 206 (1996), *disc. rev. denied*, 345 N.C. 345, 483 S.E.2d 175 (1997). Even if the petitioners have concern "over whether they will receive city services in return for city taxes, the City fulfilled its statutory obligation by promising to provide those services [and] [i]f the City fails to provide the services as promised within the statutory time limits, petitioners may apply for a writ of mandamus to order the City to provide those services." *Id.* at 608, 478 S.E.2d at 207.

We conclude that the City substantially complied with N.C. Gen. Stat. § 160A-47(3)(a). *See Briggs* at 560, 583 S.E.2d at 735. Accordingly, this assignment of error is without merit.

## VI. Conclusion

For the reasons stated above, we hold that the trial court did not err in upholding the City's 27 June 2002 adoption of the ordinance to annex the area generally referred to as the Huntington Chase Area because 1) the City substantially complied with N.C. Gen. Stat. § 160A-48; 2) the City was not required to hold a second public hearing under N.C. Gen. Stat. § 160A-49(e); and 3) the City's Services Plan adequately addressed the provision of police services to the Area under N.C. Gen. Stat. § 160A-147. *See* N.C. Gen. Stat. §§ 160A-47, 160A-48, and 160A-49(e). Accordingly, we affirm the judgment entered on 31 January 2006 by Judge James W. Morgan in Superior Court, Buncombe County.

AFFIRMED.

Judges McCULLOUGH and ELMORE concur.